In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-482 CV


____________________



IN RE THE COMMITMENT OF HAMOND HALL






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 05-03-02265 CV






 MEMORANDUM OPINION 


 The trial court ordered the civil commitment of appellant Hamond Hall after the jury
found him to be a sexually violent predator ("SVP"). See Tex. Health & Safety Code
Ann. §§ 841.001-841.150 (Vernon 2003 & Supp. 2005). The SVP statute defines "sexually
violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers
from a behavioral abnormality that makes the person likely to engage in a predatory act of
sexual violence." Tex. Health & Safety Code Ann. § 841.003 (Vernon 2003). The
statute defines "behavioral abnormality" as "a congenital or acquired condition that, by
affecting a person's emotional or volitional capacity, predisposes the person to commit a
sexually violent offense, to the extent that the person becomes a menace to the health and
safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp.
2005). In this appeal, Hall challenges the legal and factual sufficiency of the evidence
supporting the trial court's findings that he suffers from a behavioral abnormality that makes
him likely to engage in a predatory act of sexual violence. We affirm.

The State's Evidence


 The State played Hall's videotaped deposition at trial. Hall testified that he committed
his first sexual offense in September of 1990, when he asked two females at a bus stop if they
needed a ride. The females accepted the ride and entered Hall's vehicle. One of the females
eventually left the vehicle. Hall prevented the second female from leaving his vehicle, and
he drove to a vacant apartment complex. He took the victim into a vacant apartment and
asked her to undress. The victim undressed, and Hall vaginally raped her. Hall described
the victim as "visibly shaken[.]" Hall denied threatening the victim in any way, but he
admitted he might not recall. The victim was a stranger to Hall. 

 Hall testified he committed his second sexual offense in November of 1990. 
According to Hall, he saw a female walking, and he pulled over and told her he would take
her into the apartment complex where she lived. The female entered Hall's vehicle, and he
drove to an area behind a grocery store. Hall attempted to touch the victim and "have some
sort of a sexual gratification with her." Hall testified his victim was "very afraid and she
resisted." After the victim continued to resist, Hall gave up and returned the victim to the
location where he found her. Hall denied threatening the victim, and he testified he did not
use any weapons during the offense. Hall testified the victim was a stranger to him. 

 According to Hall, he committed another sexual offense in November of 1990. Hall
testified he saw a female at a bus stop, and he offered her a ride. The female entered Hall's
vehicle, and Hall drove behind a store. Hall stated the victim appeared to be scared. Hall
attempted to touch the victim, but she opened the car door. Hall grabbed the victim's jacket
to stop her from leaving, but the victim "maneuvered herself out of both, her jacket and her
shirt, and therefore exited the vehicle." Hall testified he had decided to try to rape the victim
after she was in the car with him. Hall stated he had never met the victim before. Hall
denied making harassing phone calls to the victim after the incident. 

 Hall testified he was using steroids when he committed the offenses, and he opined
that the steroids made him more aggressive. Hall did not recall precisely when he took the
steroids, but he testified he took them for one six-week cycle. When asked if he had any idea
why he committed his sexual offenses, Hall testified that when he was four to six years old,
a live-in cousin anally molested him. Hall admitted he was sexually aroused when he
committed his offenses. Hall also admitted he pled guilty to each offense, and that one of the
offenses was aggravated kidnapping with a deadly weapon. Hall stated he felt remorse for
his offenses. Hall testified that he had been disciplined three times for sexual misconduct in
prison. Hall testified he does not believe he has serious difficulty controlling his sexual
behavior. 

 Hall testified he was convicted as a juvenile of negligently injuring another child
while using an aerosol can and a lighter. Hall also had juvenile convictions for attempted
theft of an automobile, theft from a store, burglary of a building, and unauthorized use of a
motor vehicle. Hall testified he spent seven months in Texas Youth Commission for the
unauthorized use of a motor vehicle. 

 Hall stated he planned to live with his wife, work as a truck driver, and participate in
church programs upon release from prison. He also expressed the desire to assist with prison
ministries and to pursue a college degree. Hall testified that he has helped to convert others
to Christianity, but he could not recall the names of any such individuals. Hall opined that
the "biggest turnaround" in his life was his conversion to Christianity in 1999. Hall also
testified that he has not been disciplined in prison since 1999. According to Hall, when he
completes his prison sentence, he will not be on parole or under mandatory supervision. Hall
stated he is still capable of having erections. 

 The State next called psychiatrist Dr. Sheri Gaines to testify at trial. Dr. Gaines
testified that she interviewed Hall for approximately two hours, and she reviewed Hall's
records from TDCJ, pen packet, police offense reports, medical records from TDCJ, and a
report from the psychiatrist who previously evaluated Hall. She opined that Hall "used a lot
of phrases which I felt like were kind of rehearsed." Dr. Gaines testified that although Hall
denied using weapons or becoming physically violent with his victims, the records indicated
Hall had used weapons in at least one of the offenses, and he had attempted to choke and hit
one of his victims. According to Dr. Gaines, although Hall expressed remorse for his
offenses, "the most emotion and tears that he showed were when we were talking about the
potential consequences that he might receive for his offenses." 

 By following the guidelines in the Diagnostic and Statistical Manual (DSM), Dr.
Gaines diagnosed Hall as suffering from pedophilia and antisocial personality disorder. 
According to Dr. Gaines, the DSM criteria define pedophilia as "fantasies, thoughts, or
behaviors involving sexual acts with children" over a period of six months. She also
testified, "You don't have to have all three. Just one of those is sufficient for the diagnosis." 
Dr. Gaines testified that antisocial personality disorder "kind of boils down to criminal
behavior, behavior such as assault on a person, lying, deceitfulness. Those kinds of things
are in the criteria." Dr. Gaines based her diagnosis of antisocial personality disorder upon
Hall's extensive history of overt criminal behaviors, and she based her diagnosis of
pedophilia upon the fact that Hall raped an eleven-year-old girl. Dr. Gaines also noted that
Hall's second victim was fourteen years old. She stated she had "[n]o hesitation" about her
diagnoses of pedophilia and antisocial personality disorder. According to Dr. Gaines, "once
you meet the [pedophilia] criteria, you meet the criteria forever." She also testified that
pedophilia is treatable, but "[p]robably most people would say it's not really curable." Dr.
Gaines also opined that Hall will have serious difficulty controlling his sexual behavior when
he is released from prison. 

 Although Dr. Gaines testified she does not consider herself an expert on actuarials and
does not administer them, she reviewed the actuarials pertaining to Hall. According to Dr.
Gaines, Hall's scores on the Static '99, MSOST-R, and Hare Psychopathy Checklist indicate
he poses a "very high risk for reoffending." Dr. Gaines also testified that "past behavior is
the best predictor of future behavior, and [Hall]'s got a long history of criminal offenses, with
three pretty serious sexual offenses; and that makes him likely to reoffend." She also noted
that Hall has not undergone "any official sex offender treatment," and he was disciplined in
prison for sexual offenses. Dr. Gaines also testified that the nature of Hall's offenses
suggests that he manipulated his victims. Dr. Gaines also identified as risk factors that Hall's
victims were strangers, the victims varied widely in age, Hall used force, Hall committed the
offenses in relatively public places, and Hall's lack of participation in official sex offender
treatment. Dr. Gaines testified that although she considered the actuarials, she would have
no trouble reaching the same conclusions without any actuarial results. 

 Dr. Gaines testified that except for a six-week course of steroids, Hall had no
significant substance abuse history. Dr. Gaines opined that steroids can cause aggression,
violence, mood changes, and irritability when used at high doses over long periods. She
characterized six weeks of steroids as "a short time." She also testified, "there is no way in
my mind that taking some GNC steroids would make you rape an 11-year-old and attempt
to rape a 14-year-old and attempt to rape a 22-year-old." Hall's counsel did not object to any
of Dr. Gaines's testimony. 

 The State played the videotaped deposition of Hall's expert, Dr. Stephen A. Thorne. 
Dr. Thorne, a clinical psychologist, interviewed Hall for approximately two-and-a-half hours,
and he reviewed Hall's records. Dr. Thorne testified, "I thought the issue of [Hall's] possible
steroid use around the same time as the offenses was a big factor, but I didn't have enough
data really to make any more of that. So my overall opinion was that he does meet criteria
as a sexually violent predator." 

 Dr. Thorne diagnosed Hall as suffering from pedophilia and antisocial personality
disorder. According to Dr. Thorne, Hall does not meet the criteria to be diagnosed as a
psychopath, but Dr. Thorne had no hesitation about his diagnoses of antisocial personality
disorder and pedophilia. Dr. Thorne characterized Hall's risk of reoffending as "medium to
high[.]" Dr. Thorne identified as risk factors Hall's possible use of force, the wide age range
of his victims, that the victims were strangers, and that the offenses occurred in relatively
public places. Dr. Thorne found Hall's sexual infractions while incarcerated to be
significant. Dr. Thorne also noted that Hall has not yet reached the age at which the risk of
recidivism significantly declines. Dr. Thorne testified that Hall "has shown a lot of
impulsivity in the past, sexually and nonsexually[,]" and his past behaviors indicate he has
the capacity to be manipulative. According to Dr. Thorne, the favorable factors for Hall are
that his victims were all female, his offenses occurred within a relatively short period, and
his offenses did not involve the use of alcohol or drugs. Dr. Thorne testified that he believed
Hall knew his offenses were wrong and regretted their impact on his victims. 

Hall's Evidence


 Hall called Dr. Thorne to testify at trial. Dr. Thorne testified that although he believed
Hall was honest and cooperative during his interview, Dr. Thorne noted "some differences
between what he told me and what the records indicated[.]" Dr. Thorne also testified that the
definition of pedophilia involves "intense and recurrent sexually arousing fantasies, interest,
or activities involving sexual behavior with . . . a prepubescent child or children" over a six-month period. Dr. Thorne testified that Hall denied having fantasies about children before
his first offense or after his last offense, so Dr. Thorne questioned whether Thorne fit the six-month criteria set forth in DSM-IV. When asked whether he believed Hall's denial of
fantasies, Dr. Thorne testified, "at some level I have to question whether that's true[.]" He
also testified that pedophiles typically fantasize for a period of time before they act. Dr.
Thorne stated, "there's a lot of evidence here to suggest [Hall] meets criteria for pedophilia,
but I'm not 100 percent sure that he meets all criteria[,]" and Dr. Thorne testified he would
like to perform a "rule out" diagnosis rather than decide upon a "straight pedophilia
diagnosis." Dr. Thorne testified he diagnosed Hall as suffering from antisocial personality
disorder. According to Dr. Thorne, although antisocial personality disorder involves
disregard of the rights of others and societal norms, it does not necessarily impact the
affected person's desire for sex. 

 Dr. Thorne testified he administered two actuarial instruments to Hall, and Hall's
scores on both indicated a high risk of recidivism. According to Dr. Thorne, upon reviewing
Hall's disciplinary history, he learned that Hall had been disciplined for fourteen minor
infractions and three major infractions. Dr. Thorne testified that two of Hall's major
infractions involved masturbating in his cell, and one involved Hall asking a female guard
if she was a lesbian. Dr. Thorne noted that Hall's most recent infraction occurred in 1997,
so he believes Hall has the ability to conform his behaviors. Dr. Thorne testified Hall applied
for admission into the sex offender treatment program at TDCJ, but Hall's application was
rejected. 

 On cross-examination, Dr. Thorne testified he believes Hall meets the criteria for civil
commitment, i.e., that Hall has a behavioral abnormality that makes him likely to engage in
predatory acts of sexual violence. Dr. Thorne also testified he believes the actuarials indicate
Hall is at high risk to reoffend. On redirect examination, Dr. Thorne stated, "[w]hen I look
at everything in terms of the risk factors, what we know about individuals who are likely to
reoffend, when I take everything into consideration, my opinion is that . . . as defined by the
statute, . . . he does meet criteria as a sexually violent predator." 

 Hall testified at his trial. Hall testified he is currently a state support inmate, which
means he has inside trusty status. Hall testified his duties include assisting the staff and
officers, and he is permitted to move throughout the building. Hall testified he has taken
college courses and participated in vocational training during his incarceration. According
to Hall, he has also participated in on-the-job training and completed a voluntary substance
abuse treatment program. Hall testified he participates in church and prison ministry
activities, and has become an ordained minister. Hall explained that he could not recall the
names of inmates he converted because prisoners refer to each other by nicknames. Hall
denied being sexually attracted to children or fantasizing about children, and he testified that
he has great remorse for his crimes. 

Hall's Issues


 In two issues, Hall challenges the legal and factual sufficiency of the evidence that he
suffers from a behavioral abnormality that makes him likely to engage in a predatory act of
sexual violence. We address issues one and two together. The SVP statute requires the State
to prove beyond a reasonable doubt that Hall is a sexually violent predator. See Tex.
Health & Safety Code Ann. § 841.062 (Vernon 2003). Therefore, we apply the standard
of review used in criminal cases for legal sufficiency of the evidence. See In re Commitment
of Mullens, 92 S.W.3d 881, 885 (Tex. App.-Beaumont 2002, pet. denied) (citing Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In addressing legal
sufficiency issues, we review all of the evidence in the light most favorable to the verdict to
determine whether a rational jury could have found beyond a reasonable doubt that Hall
suffers from a behavioral abnormality that makes him likely to engage in a predatory act of
sexual violence. Id. We also apply the factual sufficiency standard used in criminal cases. 
In a factual sufficiency review, we consider all of the evidence in a neutral light and
determine whether the evidence supporting "the verdict is too weak to support the finding
of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that
the beyond-a-reasonable-doubt standard could not have been met." Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004); see also Zuniga v. State, 144 S.W.3d 477, 484-85
(Tex. Crim. App. 2004).

 As part of his legal sufficiency argument, Hall contends that "[t]he only testimony that
could be construed to create an inference to support a finding that an 'abnormality'
predisposes Mr. Hall to commit sexually predatory offenses in the future was incompetent
evidence and, thus, no evidence." Citing Coastal Transport Co., Inc. v. Crown Central
Petroleum Corp., 136 S.W.3d 227, 233 (Tex. 2004), Hall asserts he did not need to object
to speculative or conclusory expert testimony. We disagree. When the complaint concerns
the foundational data used or relied upon by an expert, a party must present a timely
objection to the trial court to preserve any complaint for appeal. See Tex. R. App. P. 33.1;
Tex. R. Evid. 103; In re Commitment of Barbee, No. 09-05-263-CV, 2006 WL 1043203, at
*4 (Tex. App.-Beaumont April 20, 2006, no pet. h.).

 Dr. Gaines testified, without objection, that she diagnosed Hall as suffering from
pedophilia and antisocial personality disorder after reviewing his records and interviewing
him. Dr. Gaines also testified that "once you meet the [pedophilia] criteria, you meet the
criteria forever." Furthermore, Dr. Gaines opined that Hall will have serious difficulty
controlling his sexual behavior upon release from prison. Dr. Gaines testified Hall's scores
on various actuarials, his extensive history of criminal offenses, and his disciplinary
infractions while incarcerated indicate Hall is at a very high risk for reoffending. Dr. Gaines
identified several risk factors indicating Hall was likely to reoffend: the fact Hall's victims
were strangers, varied widely in age, the offenses involved the use of force, the offenses
occurred in relatively public places, and Hall's lack of participation in sex offender treatment.

 Hall's expert, Dr. Thorne, testified by deposition that he had no hesitation about his
diagnoses of antisocial personality disorder and pedophilia, and he placed Hall at a "medium
to high risk to reoffend." Dr. Thorne identified as risk factors some of the same
considerations mentioned by Dr. Gaines. At trial, Dr. Thorne expressed concern about Hall's
steroid use and testified he was not certain Hall met all of the criteria for pedophilia. Dr.
Thorne opined that because Hall's most recent disciplinary infraction occurred in 1997, Hall
can conform his behaviors. However, Dr. Thorne conceded that he believes Hall has a
behavioral abnormality that makes him likely to engage in predatory acts of sexual violence 
and is at high risk to reoffend. 

 Since the jury heard Dr. Gaines's expert testimony without objection, the jury was free
to believe or disbelieve the testimony, and they chose to believe it. Furthermore, much of
Dr. Thorne's testimony corroborated that of Dr. Gaines. Having carefully reviewed the
record in the light most favorable to the trial court's judgment, we find the evidence is legally
sufficient. We also find the evidence is factually sufficient under the relevant standards of
review. Having carefully reviewed all of the evidence in a neutral light, we find the evidence
supporting the verdict is not too weak, nor is the contrary evidence so strong that the burden
of proof could not be met. The jury was rationally justified in finding Hall suffers from a
behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.
We overrule issues one and two and affirm the judgment of the trial court.

 AFFIRMED. 

 _________________________________

 HOLLIS HORTON 

 Justice 

Submitted on April 26, 2006

Opinion Delivered June 15, 2006

Before Gaultney, Kreger, and Horton, JJ.