## In re The COMMITMENT OF Donald Lee BARBEE.

No. 09–05–263–CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 17, 2006.

Decided April 20, 2006.

Michael S. Falkenberg, State Counsel of Offenders, Huntsville, for appellant.

Autumn Lewis, Special Prosecution Unit, Civil Division, Huntsville, for appellee.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury determined that Donald Barbee was a sexually violent predator under Texas law. See Tex. Health & Safety Code Ann. §§ 841.001–.147 (Vernon 2003 & Supp.2005). The jury found that Barbee suffers from a behavioral abnormality making him likely to engage in a predatory act of sexual violence and that he has serious difficulty controlling his sexually violent behavior. Barbee presents five issues in his appeal from the judgment and order of civil commitment. We find no error and affirm the judgment.

*Legal and Factual Sufficiency*

In issues one through three, Barbee challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. The Sexually Violent Predator Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. See Tex. Health & Safety Code Ann. § 841.062 (Vernon 2003). Because the State has the burden of proof that is employed in criminal cases, we use the appellate standard of review applied in criminal cases for legal sufficiency of the evidence. *See In re Commitment of Mullens,* 92 S.W.3d 881, 885 (Tex. App.-Beaumont 2003, pet. denied) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). For legal sufficiency, we review all of the evidence in a light most favorable to the verdict. *Id.* Here, we must review evidence at trial to decide if a rational jury could have found, beyond a reasonable doubt, that Barbee has serious difficulty in controlling his behavior.

We will also apply the factual sufficiency standard applied in criminal cases. In a factual sufficiency review in a criminal case, we consider all of the evidence in a neutral light and determine whether evidence supporting "the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met." *Threadgill v. State,* 146 S.W.3d 654, 664 (Tex.Crim.App.2004); *see also Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004).

To meet its evidentiary burden, the State offered the testimony of Sheri Gaines, M.D., Charles Woodrick, Ph.D., and Donald Barbee. Dr. Gaines is a board-certified psychiatrist. She testified that she met with Barbee in November

2004, and interviewed him to evaluate whether in her opinion he is a sexually violent predator. Dr. Gaines also reviewed various criminal records, parole board records, Barbee's deposition testimony taken in the civil commitment proceeding, and records from the sex offender treatment program in which Barbee participated while in prison. Dr. Gaines diagnosed Mr. Barbee as suffering from pedophilia, substance dependence, and an antisocial personality disorder. Dr. Gaines testified that Barbee "does have a behavioral abnormality, and he is likely to reoffend." Dr. Gaines testified that Barbee will have difficulty controlling his sexual urges, and that his behavioral abnormality makes him likely to engage in a predatory act of sexual violence. Barbee's attorney did not object to her testimony at trial.

The State then called a psychologist, Dr. Charles Woodrick. Dr. Woodrick interviewed Mr. Barbee on April 19, 2004 for approximately one hour, reviewed various records, administered various psychological tests, and determined that Barbee suffered from an antisocial personality disorder and pedophilia. Dr. Woodrick testified these disorders are behavioral abnormalities that made Barbee likely to reoffend. Dr. Woodrick testified that as a clinician, separate from the psychological tests, he believes that Barbee is likely to reoffend. According to Dr. Woodrick, two of the psychological tests he administered also showed that Barbee had a moderate risk of recidivism. Barbee lodged no objections at trial to Dr. Woodrick's testimony.

With respect to the State's evidence of prior convictions, the State introduced, without objection, the records of the Texas Department of Criminal Justice. The State also introduced portions of Barbee's deposition testimony, in which he admitted he pled guilty to four counts of aggravated sexual assault of a child. Barbee further admitted to more than four instances of criminal conduct involving sexual assault of children. The Sexually Violent Predator Act requires that there be evidence of more than one prior conviction of a sexually violent offense. Tex. Health & Safety Code Ann. § 841.003(b) (Vernon 2003).

The jury also heard Barbee's deposition testimony in which he testified that he did not need to avoid living with children. Although in his deposition Barbee expressed remorse for his crimes, the State also introduced Barbee's admission in response to the State's requests for admission that he did not think that his sexual assaults affected his victims' lives. Barbee called three witnesses in his defense. Barbee's first witness was his mother, who testified that it surprised her to hear that the State charged her son with aggravated sexual assault of several children. She testified that Barbee expressed remorse for his crimes. Barbee's mother testified that two of Barbee's siblings would be willing to help Barbee find a job and a place to live. She testified that she did not believe that Barbee is likely to commit offenses abusing children in the future.

Barbee then called Dr. Tim Branaman, a psychologist, who holds a board certification in forensic psychology. Dr. Branaman testified that although he somewhat agreed on Barbee's diagnosis of pedophilia, he disagreed that Barbee had an antisocial personality disorder and substance dependence. Dr. Branaman testified that a pedophilia diagnosis does not necessarily mean that the person will reoffend. In forming his opinions, Dr. Branaman interviewed Barbee, administered a psychological test, and reviewed records and Barbee's other psychological tests. Dr. Branaman testified that the psychological test he administered did not show that Barbee had a psychopathetic personality,

and that although Barbee had shown past signs of an antisocial personality, Barbee did not meet the diagnostic criteria for antisocial personality disorder. Dr. Branaman also interviewed Barbee. Dr. Branaman testified that based on the psychological test he administered, Barbee had a low to moderate risk of reoffending with respect to future sexual offenses. Dr. Branaman testified that more likely than not, Barbee would fall into the eighty-four percent of men who scored similarly on these tests who do not reoffend. Dr. Branaman testified that two factors mitigated against the possibility of Barbee's committing future sexual offenses. First, Barbee had sustained a former marriage for more than two years, and, second, he had shown remorse.

On cross-examination by the State's attorney, Dr. Branaman admitted that he testified for defendants in civil commitment cases ninety percent of the time, and that of all the people he had evaluated in similar civil commitment cases, only one met the criteria for commitment. He further agreed that Barbee was less forthcoming in his interview than the average male.

The jury could have believed that Dr. Branaman attempted to avoid answering a question regarding whether pedophilia is a behavioral abnormality, and that he attempted to avoid agreeing that past behavior is a good indicator of future behavior. Dr. Branaman seemed to discount a letter to the parole board from one of Barbee's victims that she had been Barbee's "sex slave" for several years. Dr. Branaman stated, "That specific act, in and of itself, was not a specific concern in terms of forming an opinion." The jury might also have concluded that Dr. Branaman was evasive regarding whether Barbee would reoffend, but Dr. Branaman's deposition

testimony showed that he admitted, "I would have to agree that there is more than a mere possibility" that Barbee will reoffend.

The jury also might have believed that Dr. Branaman had only a vague recollection of the content of Barbee's records. For example, Dr. Branaman was equivocal at trial concerning whether Barbee's records showed that Barbee had vaginal intercourse with some of his victims, but on being shown the records he admittedly reviewed, he agreed they did show that Barbee had vaginal intercourse with minors. Dr. Branaman's recollection about whether Barbee admitted that he had engaged in behavior to groom one of his victims was vague at trial. But when Dr. Branaman's deposition was used to refresh his recollection, he conceded that Barbee had admitted grooming a victim for six months.

As his last witness, Barbee called Dr. Antoinette McGarrahan, a psychologist. Dr. McGarrahan reviewed Barbee's records and met with him in October 2004. Dr. McGarrahan testified that Barbee was cooperative when she interviewed him. Dr. McGarrahan testified that her testing showed that Barbee was a low risk for psychopathic behaviors, and was a low risk for sexual recidivism. At the time of trial, Dr. McGarrahan noted that Barbee had completed two phases of a sex offender treatment program in prison, and his progress was excellent. Dr. McGarrahan also testified that she did not believe Barbee had an antisocial personality disorder, and that Barbee does not suffer from a behavioral abnormality that makes him likely to reoffend.

On cross-examination, Dr. McGarrahan testified she diagnosed Barbee with pedophilia, polysubstance dependence, and adult antisocial behavior. In cases involving civil commitments, Dr. McGarrahan

said that she testifies for the defendant eighty-five percent of the time. Dr. McGarrahan testified that pedophilia can be a behavioral abnormality sometimes, but was not in Barbee's case because the definition also requires that the person be likely to engage in predatory acts of sexual violence. Barbee, according to Dr. McGarrahan, does not meet that criteria. However, she agreed that it is possible that Barbee might reoffend. Dr. McGarrahan agreed that evidence in the records showed that Barbee groomed his victims. As of the trial date, Dr. McGarrahan indicated that Barbee had not completed his treatment program and that as of the time she interviewed him, he still did not fully appreciate the impact of his actions on his victims. Dr. McGarrahan also questioned whether the records she reviewed indicated that Barbee's conduct with his victims included intercourse, but admitted when shown the records that they did mention penetration, and that a count in one of the indictments to which Barbee pled guilty was for sexual assault by penetration.

Dr. McGarrahan agreed that if Barbee's adolescent conduct was consistent with a conduct disorder, she would raise Barbee's risk of reoffending to a moderate risk. Dr. McGarrahan agreed that one's view of Barbee's adolescent history called for a subjective judgment about whether his past behavior showed a persistent, repetitive pattern of antisocial behavior.

■■ A jury is entitled to draw reasonable inferences from basic facts to determine ultimate fact issues. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App.2000). In reviewing the sufficiency of the evidence, we consider matters including the nature of the psychiatric disorder and the severity of the abnormality. *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 871, 151 L.Ed.2d 856 (2002); *Mullens*, 92 S.W.3d at 885. The evidence is undisputed that Barbee committed multiple offenses against multiple victims, and that his misconduct occurred frequently over a period of years. While all of the experts agreed that Barbee suffered from pedophilia, none of them testified that Barbee was cured or that pedophilia is curable.

■ Although two of the expert witnesses testified that the risk of Barbee's reoffending is low, other experts assessed the risk that he might reoffend as moderate. The jury could also consider Barbee's testimony that, with respect to each offense, he knew he was doing something wrong yet chose to proceed. In evaluating whether Barbee might reoffend, the jury could have considered that the testimony showed that Barbee still does not fully appreciate his conduct's impact on his victims. A jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *Mullens*, 92 S.W.3d at 887.

■ Barbee argues that we should disregard the testimony of Dr. Gaines and Dr. Woodrick that Barbee suffered from a behavioral abnormality. Barbee also argues he did not need to object to conclusory or speculative testimony because it amounts to no evidence, or factually insufficient evidence, to support the jury's verdict.

As support for his argument, Barbee cites *Coastal Transport Co., Inc. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004). Under the facts and circumstances presented here, we do not believe that *Coastal's* preservation of error standards apply. In *Coastal*, the Texas Supreme Court reviewed the reliability of a trucking-safety expert who testified that a defendant's conduct involved a high degree of risk; that the defendant had an actual awareness of the risk; and that the defendant nevertheless proceeded with

conscious indifference to the safety of others. *Id.* at 231. The Court held that no objection is necessary to preserve error when the evidence in the record demonstrates that the expert's opinion is not probative on its face. *Id.* at 233.

Even though the Coastal Court did not require an objection to preserve error in view of the expert's testimony and the record, the Court specifically stated that when the challenge to the reliability of the expert requires the court to examine the expert's underlying methodology, technique, or foundational data, a timely objection is required "so that the trial court has the opportunity to conduct this analysis." *Id.* Thus, when the complaint concerns the foundational data used or relied upon by the expert, a party must present a timely objection to the trial court to preserve any complaint for appeal. Tex.R. Evid.103; Tex.R.App. P. 33.1; *see Guadalupe–Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 806–07 (Tex.2002); *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex. 1998).

The record here shows that Dr. Gaines and Dr. Woodrick were licensed in their respective fields, both interviewed Barbee, and both reviewed Barbee's records. These records included material from Barbee's sex offender treatment program. Dr. Woodrick administered the Hare Psychopathy Checklist–Revised version, the MSOST–R, and the Static '99, which are three actuarial tests he used to assist in his determination of Barbee's risk of reoffending. Dr. Woodrick explained how Barbee's scores on these tests were consistent with his opinion that Barbee presents a moderate risk of reoffending. Dr. Woodrick also stated that his opinion in Barbee's case is consistent with his professional training.

Barbee complains that Dr. Gaines and Dr. Woodrick did not explain why Barbee was predisposed to commit acts of sexual violence, that Dr. Woodrick did not explain the basis of his clinical judgment, and that a court should not rely on the bare opinion of an expert. Additionally, Barbee argues that in looking at the testimony as a whole, the testimony of his experts, Dr. Branaman and Dr. McGarrahan proved that Barbee was unlikely to reoffend. Therefore, Barbee concludes that the State did not carry its burden of proving that Barbee suffers from a behavior abnormality that makes him likely to engage in a predatory act of sexual violence.

Evaluating the admissibility of Dr. Gaines' and Dr. Woodrick's testimony would require that we investigate the foundational data that they used to express an opinion that Barbee is likely to reoffend. Generally, the most appropriate manner to allow the trial court to consider this type of objection is a pre-trial objection to the expert's reliability. *Ellis,* 971 S.W.2d at 412 (Gonzalez, J., concurring). When the basis of the complaint is about the foundational data used or relied upon by the expert, a party must present a timely objection to the trial court to preserve his complaint for appeal. Tex.R. Evid.103; Tex.R.App. P. 33.1; *see Kraft,* 77 S.W.3d at 806–07; *Ellis,* 971 S.W.2d at 409. We hold that objections were necessary to preserve the complaints made to Drs. Gaines' and Woodrick's testimony.

Since the jury heard Dr. Gaines' and Dr. Woodrick's testimony without any objection to it, they were free to believe or disbelieve it, and they chose to believe it. Having carefully reviewed the record, we find the evidence legally sufficient under the relevant standards of review to support the jury's findings. We also find the evidence factually sufficient under the relevant factual sufficiency standards of review to support the jury's verdict. Appellant's issues one, two, and three are overruled.

*Voir Dire*

In his fourth and fifth issues, Barbee complains of error that he alleges occurred during the questioning of prospective jurors. In issue four, Barbee argues the trial court abused its discretion by preventing him from learning whether jurors were biased and whether they could listen to evidence detailing Barbee's past convictions. The State contends that the trial court properly refused to allow these questions because they sought improper commitments from the prospective jurors. In issue five, Barbee complains the trial judge made improper comments during voir dire in the presence of the prospective jurors. Barbee complains the court improperly controlled his attorney's questions to juror six, juror ten, and juror twenty, and in addition improperly controlled a general question to the array.

During the State's voir dire, juror six commented that if Barbee had multiple convictions, that would "explain everything." Juror six then stated that he could wait and listen to all the evidence before making up his mind. Afterwards, Barbee's attorney posed several questions to juror six relating to juror six's response to the State's questions, as follows:

[Barbee's counsel]: I believe you stated that you could not listen to that kind of evidence and be a fair and impartial juror. Could you?

[Juror six]: No, that's not what I stated.

[Barbee's counsel]: Okay.

[Juror six]: I stated that if he had multiple convictions, that I might not be able to.

[Barbee's counsel]: Okay. If it's more than two convictions?

[Juror six]: Yes. Yeah, something like that.

[Barbee's counsel]: Huh?

[Juror six]: Something like that.

[Barbee's counsel]: That would be enough for you not to be able to be a fair and impartial juror?

[State's attorney]: I'm going to object to that question, Your Honor. He's asking for a comment on the weight of the evidence.

[The Court, addressing Barbee's counsel]: Sustained. . . . [Y]ou know better than that. Let's move on.

[Barbee's counsel]: All right.

[The Court, addressing Barbee's counsel]: You've been doing this for 30 some odd years. You ought to have a real good idea of what's—

[Barbee's counsel]: I do, Your Honor.

[The Court]: All right. Let's move on. I'm not going to tolerate it.

[Barbee's counsel]: I'll make the general question again: Who could not be a fair and impartial juror if the evidence showed that the crimes for which Mr. Barbee was convicted involved children of tender age?

[The Court, addressing Barbee's counsel]: . . . [Y]ou are now asking them, if they hear evidence that he has been convicted, is that going to influence them.

[Barbee's counsel]: No, Your Honor.

[The Court]: Yes, sir, you certainly are.

[Barbee's counsel]: If they can be—

[The Court, addressing Barbee's counsel]: I'm telling you, you are not going to examine this panel in such a fashion as that. Now move on and stop trying to get them to commit to your way of thinking so you can quash this entire panel. And I make—better make it clear to you.

[Barbee's counsel]: Yes, Your Honor. And I accept your ruling. I accept your ruling.

During voir dire, juror ten indicated that she could not sit and listen to the evidence if the evidence shows that "he was convicted of molesting children." Barbee's attorney later exercised one of his peremptory strikes on juror number six, and the court struck juror ten per the agreement of the parties.

Barbee also complains about the trial court's control over his questioning of juror number twenty, and about a follow-up question his attorney asked the jury panel. Barbee posed the following general questions:

[Barbee's counsel]: What about, how many of you have the belief that, "Once a sexual offender, always a sexual offender"? "If he did it in the past, he'll do it in the future"?

. . . .

[Juror twenty]: If he's already been convicted multiple times, not just once, but if he's been convicted more than once already, then it's done; he's going to do it again.

[Barbee's counsel]: So, you wouldn't need to listen to all the evidence; is that correct?

[Juror twenty]: If he's already—if he's—if there's been a—in a case, if there's been a sexual offender that's been convicted more than once, then, as far as I'm concerned, he needs to be put away for good.

[The Court]: Again, . . . you are asking this panel to commit to you which kind of evidence will have the greatest influence on them and which will not. So, again, I'm telling you I'm not going to permit you to do that. Throw out some kind of statement about what kind of evidence and then you ask them what their conclusion would be if they heard something like that. And that is improper. You cannot do that. You will not do that.

[Barbee's counsel]: All right. Anybody else? Somebody else raised their—their number.

[State's attorney]: Your honor, I'm going to have to object. He just asked if anybody else felt the same way.

[The Court]: Sustained.

[Barbee's counsel]: I have no further questions.

The State subsequently agreed with Barbee's motion to strike juror twenty for cause.

Barbee also complains about comments the judge made during voir dire. During Barbee's attorney's voir dire, the court interrupted his questioning and stated, "I see what you're trying to do, [Counsel]; and I know what you're trying to do. You're trying to bust this entire panel." The attorney denied the court's assertion, and stated, "[T]hey themselves, have been very honest so far." The court responded, "Yeah. And I want you to be honest." Later, the trial court interrupted Mr. Barbee's attorney and stated "I'm telling you, you are not going to examine this panel in such a fashion as that. Now move on and stop trying to get them to commit to your way of thinking so you can quash this entire panel." Barbee argues that the court's comments were prejudicial because they questioned the honesty of his attorney, and suggested bad faith.

 In issue four, Barbee complains that the trial court improperly limited his questioning of certain jurors. Under Texas law, bias or prejudice of a prospective juror of or against a party disqualifies the prospective juror from serving on the jury. See Tex. Gov't Code Ann. § 62.105(4) (Vernon 2005). Thus, one purpose of voir dire is to find biased jurors, and eliminate them from the jury panel.

In reviewing complaints regarding voir dire, we consider the entire examination of the jury panel, and not just the answers of individual jurors. *Cortez v. HCCI—San Antonio, Inc.*, 159 S.W.3d 87, 93–94 (Tex.2005). "[V]oir dire examination is largely within the sound discretion of the trial judge and ... broad latitude is allowed for examination." *Id.* at 92.

When the voir dire includes a preview of the evidence, a trial court does not abuse its discretion when "refusing to allow questions that seek to determine the weight to be given (or not to be given) a particular fact or set of relevant facts." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753 (Tex., 2006) (not yet released for publication, subject to revision or withdrawal). Whether an individual question posed to a panel of potential jurors focuses on bias or prejudice, or is a preview of evidence, is sometimes difficult to discern from the trial's transcript. *Id.* Generally, the "trial judge is in a better position to evaluate the reasonableness of both aspects—the question and the answer." *Id.* "When the trial court determines that a proffered question's substance is confusing or seeks to elicit a precommitment from the jury, counsel should propose a different question or specific area of inquiry to preserve error on the desired line of inquiry; absent such an effort, the trial court is not required to formulate the question." *Id.* at 758.

Here, the voir dire previewed the fact that Barbee had sexually assaulted children. The substance of the questions at issue either relate directly to a preview of a juror's attitude about Barbee, or elicit a juror's response to a general question after exposing the juror to the fact that Barbee had prior criminal convictions for sexual crimes. We hold that the questions about which Barbee complains preview the fact that Barbee had prior convictions for crimes involving children.

We next consider whether the questions posed by Barbee's attorney sought to detect the weight that a juror might give to Barbee's prior convictions for sexual offenses against children. During voir dire, several jurors expressed reservation regarding whether they could be fair and impartial if the evidence showed that Barbee had been convicted of multiple prior convictions for sexual assault of children.

A skillful advocate would find this information useful in striking the jury, and naturally Barbee's attorney sought to ask questions designed to detect how different jurors might weigh the fact that Barbee had prior criminal convictions. The record shows that the jurors understood the substance of the questions to relate to whether they could be fair to Barbee, given his previewed record of past convictions. We find that the questions at issue were directed at determining the weight that jurors might place on Barbee's prior convictions. Under these circumstances, the trial court has the discretion to prohibit improper questions although it cannot foreclose all inquiry about a relevant topic. *Vasquez*, 189 S.W.3d at 758.

Finally, we address whether Barbee properly preserved any alleged error in the trial court's rulings regarding his questions. On being restricted in questioning, the questioner must propose a different question or articulate a specific area of inquiry. *Id.* We find that with respect to the voir dire questions that the trial judge foreclosed, Barbee failed to preserve any error. Barbee's counsel never requested that the trial judge permit him to pose any alternate questions to the jury panel. Absent the questioner's proposing a different question, or being foreclosed completely by the trial court from posing a

different question on the same topic, nothing is preserved for appellate review.

■ Because Barbee's counsel did not propose alternative questions, or articulate a desired line of inquiry, we cannot know whether the trial judge would have allowed proper questions that probed whether potential jurors had preconceived biases or prejudices that disqualified them from jury service here. The purpose of the rule is to allow the trial judge the opportunity to permit a properly phrased question or line of questions during voir dire. On this record, we hold the trial court's rulings limiting the voir dire were within its discretion, and that no error in its exercise of that discretion was preserved. We overrule issue number four.

### Conduct/Comments of Trial Judge

■ In his fifth issue, Barbee contends the trial court demonstrated bias in interrupting his voir dire, accusing him of trying to bust the panel, and scolding him in the presence of the potential jurors. We review improper comments of a trial judge as a question of law. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). A trial court has great discretion in the manner it conducts a trial, and possesses "the authority to express itself in exercising this broad discretion." *Id.*, 240–41. The complaining party first must show the comments were improper, and then show that the improper comments prejudiced the complaining party. *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex.App.-Houston [1st Dist.] 1994, writ denied). To preserve any error on appeal, a party must object when the comment occurs and request an instruction unless proper instruction cannot render the comment harmless. *Francis*, 46 S.W.3d at 241.

■ Generally, Texas law imputes good faith to a trial judge's judicial actions in controlling a trial. *Schroeder v. Bran-*

*don*, 141 Tex. 319, 172 S.W.2d 488, 491 (1943). We have carefully examined the record and find four occasions during voir dire when the trial court interrupted Barbee's counsel. On two of these occasions, the trial court interrupted even though the State had not objected to Barbee's questions, and on two occasions the interruptions relate to the State's objections to Barbee's questions. When the trial court interrupted without a prior objection by the State, the record shows that the trial court sought clarifications to questions that it considered potentially confusing.

On the occasions when the interruptions were related to objections posed by the State, the trial court sustained the State's objections in both instances. The judge's comments included the suggestion that a question was improper, because it served to preview the jurors' attitudes about how they might weigh evidence of Barbee's prior criminal convictions. When the trial court sustained the other objection by State's counsel, it did so without comment.

■ A trial court "may properly intervene ... to expedite the trial, and to prevent what it considers to be a waste of time." *Francis*, 46 S.W.3d at 241. It is also clear to us that during voir dire, attorneys for the parties may be required to respond to the court's questions about whether a question is narrowly framed to avoid confusion or questions regarding whether a question is intended to preview a verdict. Although it might be wise for a trial court to avoid engaging in a discussion of how to phrase questions in front of the jury panel, nothing in the Supreme Court's opinions in Vasquez or Cortez suggests that all discussion between the trial court and the trial attorneys regarding proper questions must take place outside the panel's presence. As a matter of law, we hold that the trial court's interruptions

of Barbee's counsel during voir dire to respond to objections and to clarify the questions posed here do not demonstrate that the trial court was biased against Barbee or his attorney.

 Barbee's complaints regarding the trial court's comment that Barbee's counsel was "trying to bust this entire panel," and the trial judge's statement to Barbee's counsel when it said, "Yeah. And I want you to be honest" present a more difficult issue. However, we note that in Francis, the Texas Supreme Court stated that " 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Francis*, 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

These comments must also be taken in the context of the entire voir dire examination. The complete voir dire record demonstrates that the trial judge properly attempted to clarify several questions posed by Barbee's attorney. The trial court sought to limit the questioning of potential jurors in a manner that would otherwise give the parties' attorneys a preview of jurors' attitudes toward facts later placed in evidence at trial. The manner in which Barbee's attorney chose to voir dire the jury required the court's intervention on more than one occasion.

Barbee cites *Metzger v. Sebek*, 892 S.W.2d 20 (Tex.App.-Houston [1st Dist.] 1994, writ denied) for the proposition that the trial court's criticism of his attorney probably prejudiced the panel. However, in Metzger, the Court of Appeals overruled complaints regarding the trial court's comments during the trial. *Id.* at 40. In Metzger, the trial court addressed one of the attorneys in responding to an objection and said, "don't mislead me anymore." *Id.*

at 37. Also, following another objection, the trial judge told the same attorney " 'think again' if he thought he was going to mislead the lawyers, the judge, and the jurors, and told [the attorney] that he had tried to 'misrepresent evidence.' " *Id.* The Houston Court of Appeals determined that these statements by the judge, when viewed with the record as a whole, constituted no evidence of bias on the part of the trial judge. *Id.* at 39.

The comments here are more innocuous than those in Metzger. They do not accuse Barbee's counsel of dishonesty, and we assume that a judge's comments during voir dire are made in good faith. Although we believe it would be wise for trial courts to avoid speculating before the jury panel on the possible motivations behind attorneys' questions, or to make comments critical of counsel, the comments complained of here fail to demonstrate bias on the part of the trial judge.

 Additionally, Barbee did not perfect his complaints regarding the trial court's statements by promptly objecting to the statements of the court, and requesting an instruction attempting to cure any curable error. *Francis*, 46 S.W.3d at 241. In summary, finding no reversible error, we overrule issue five. Accordingly, we overrule all of Barbee's issues and arguments.

We affirm the judgment and order of the trial court.

AFFIRMED.