In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-534 CV


____________________



IN RE COMMITMENT OF RICHARD GOODWIN







On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 05-06-04904-CV






MEMORANDUM OPINION


 The trial court found appellant Richard Goodwin to be a sexually violent predator
("SVP") and ordered Goodwin's civil commitment. See Tex. Health & Safety Code Ann.
§§ 841.001-841.150 (Vernon 2003 & Supp. 2006). The SVP statute defines "sexually
violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers
from a behavioral abnormality that makes the person likely to engage in a predatory act of
sexual violence." Tex. Health & Safety Code Ann. § 841.003 (Vernon 2003). The
statute defines "behavioral abnormality" as "a congenital or acquired condition that, by
affecting a person's emotional or volitional capacity, predisposes the person to commit a
sexually violent offense, to the extent that the person becomes a menace to the health and
safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp.
2006). In this appeal, Goodwin challenges the factual sufficiency of the evidence supporting
the trial court's findings (1) that he suffers from a behavioral abnormality that makes him
likely to engage in a predatory act of sexual violence and (2) that he has serious difficulty
controlling his sexually violent behavior. We affirm.

The Evidence


 Dr. Sheri Gaines, a board-certified psychiatrist, testified that she evaluated Goodwin
to ascertain whether he met the criteria for civil commitment as a SVP. Before interviewing
Goodwin for approximately two and a half hours, Dr. Gaines reviewed an evaluation of
Goodwin by Dr. Woodrick, as well as Goodwin's education records, medical records, records
from TDCJ, sex offender treatment records, and parole case summaries and status reports. 
Dr. Gaines diagnosed Goodwin with pedophilia and attention deficit hyperactivity disorder
(ADHD). Dr. Gaines testified that she based her pedophilia diagnosis upon Goodwin's
sexual offenses against children, and the fact that his offenses occurred for well over a six-month period of time. Dr. Gaines based her diagnosis of ADHD upon information Goodwin
provided about having been treated for the disorder as a child, as well as Goodwin's history
of impulsivity, hyperactivity, and poor attention and concentration.

 According to Dr. Gaines, Goodwin suffers from a behavioral abnormality that
predisposes him to commit acts of sexual violence, to the extent that he becomes a menace
to the health and safety of another person. Dr. Gaines opined that Goodwin's pedophilia
makes him likely to reoffend, and she also stated, "The ADHD is kind of relevant because
Mr. Goodwin is a pedophile, and the ADHD makes him more impulsive. So people with
ADHD aren't likely to become pedophiles; but, for Mr. Goodwin, since he has both of those
together, it's a bad combination." Dr. Gaines testified that Goodwin's ADHD makes him
likely to be unable to control his sexual urges, and she noted that "Goodwin's impulses
historically have shown up in a sexual way." Dr. Gaines concluded Goodwin meets the
criteria for civil commitment as a SVP.

 Dr. Gaines testified that Goodwin's first sexual offense occurred in the public
restroom of a movie theater. Goodwin was masturbating in the restroom when a seven-year-old child entered, and Goodwin continued to masturbate. According to Dr. Gaines, the
offense report indicates Goodwin asked the child to perform oral sex on him, but Goodwin
denied that allegation. Goodwin also committed a sexual offense against a twelve-year-old,
but those charges were dropped. Dr. Gaines testified that Goodwin admitted having anal sex
with one fourteen-year-old boy and oral sex with another. Goodwin also masturbated in the
restroom at a public park when a six-year-old boy walked in, and Goodwin asked the boy to
perform oral sex on him. As a result of this offense, the probation Goodwin had received
was revoked. According to Dr. Gaines, Goodwin "admitted to those offenses. He admitted
that it was sexually stimulating to him when the children walked in on him in the public rest
rooms, that . . . was gratifying to him and sexually stimulating to him. He admitted that he
was stimulated by the two 14-year-olds and the 12-year-old." Dr. Gaines also testified that 
the two fourteen-year-olds and the twelve-year-old stayed at Goodwin's house for several
days.

 Dr. Gaines testified Goodwin "admitted verbally that he was attracted to the 14-year-olds. He described the 12-year-old's genitalia to me." Dr. Gaines also noted that Goodwin
blamed the victim he abused at the movie theater for "walking in on him." According to Dr.
Gaines, Goodwin "also indicated that he didn't realize some of those things were against the
law until after he had been arrested." Dr. Gaines opined that these factors indicated "poor
judgment, poor insight, and lack of remorse for the victims." Dr. Gaines testified that many
pedophiles blame their victims, and "it's a bad prognostic factor" that makes Goodwin more
likely to reoffend. Dr. Gaines also noted that all of Goodwin's victims were strangers.

 Dr. Gaines testified that Goodwin told her he began masturbating when he was
approximately eleven-years-old, and he "would masturbate compulsively several times a day,
even to the point where he would injure his penis. He said that he had approximately 150
sexual partners in his life." Dr. Gaines also testified, 

 The length of time over which these offenses occurred is a risk factor. 
The age range of these victims is a risk factor. The fact that the victims were
strangers is a risk factor. There's some other -- well, the ADHD for Mr.
Goodwin, as an individual, is a risk factor.


 There's some other information in the reports that I read that I see as
risk factors, and that [sic] are some statements that were indicated in the
records that Mr. Goodwin would continue to reoffend. There's [sic] some
statements in the records that Mr. Goodwin would murder future victims so
they would not be able to identify him. And another statement that Mr.
Goodwin reportedly made where he would get revenge on society.


Dr. Gaines identified Goodwin's inability to abide by the conditions of his probation as an
additional risk factor. Dr. Gaines also testified that Goodwin had "said that he often felt out
of control."

 According to Dr. Gaines, Goodwin indicated that his religion has helped him to "pray
or read the Bible or change his thoughts so he doesn't dwell on masturbation and sexual
thoughts as much as he used to." Dr. Gaines opined that Goodwin's church affiliation was
positive, but it did not change her opinion that he was a SVP who has a behavioral
abnormality and is likely to reoffend. Dr. Gaines testified that although she believed
Goodwin was praying and reading the Bible, "prison is a very controlled, structured
environment with, obviously, no access to children. So I'm not sure how well he's going to
be able to do that when he's released from prison." Dr. Gaines testified that Goodwin was
participating in the sex offender treatment program in prison, and he seemed to be doing a
good job in the program.

 Dr. Gaines testified that past behavior is the best indicator of future behavior, and she
believes Goodwin will have serious difficulty controlling his sexual urges. Dr. Gaines
testified, "Goodwin's past behavior is so concerning to me that I think despite . . . support
he's still going to have problems controlling his behavior." Dr. Gaines stated that although
she does not consider herself an expert on actuarials, she reviewed some of the actuarials
performed on Goodwin, which indicated Goodwin "is at high risk or very high risk of
reoffending sexually." Dr. Gaines also testified that pedophilia is incurable.

 Goodwin testified via video deposition. (1) Goodwin testified that he pled guilty to two
offenses of sexual assault of a child in 1997. According to Goodwin, these two offenses
occurred when he went to a park hoping to have oral sex. When Goodwin exited the
restroom at the park, he noticed two male teenagers, who told him they were living on the
street and asked him if they could spend the weekend at his home. Goodwin testified that
the two males were strangers, and he fantasized about participating in a threesome with them.
Goodwin testified that he received anal sex from one of the victims and gave oral sex to the
other. Goodwin testified he was also charged with sexual assault involving a twelve-year-old
male, but that charge was dropped.

 Goodwin stated he had also received probation for indecency with a child. According
to Goodwin, that offense occurred when he was masturbating in the restroom at the movie
theater and a child saw him. Goodwin admitted that he felt a sense of gratification because
the victim was watching him, and Goodwin fantasized that the victim "would want to do the
same thing[.]" Goodwin denied asking the child to perform oral sex. Goodwin testified that
he also pled guilty to indecency with a child in 1995 after a child entered the restroom at a
public park where Goodwin was masturbating. Goodwin denied asking the child to perform
oral sex. Goodwin denied telling his probation officer that he would murder his future
victims to prevent being caught. Goodwin also denied saying that he would get revenge on
society if he were sent to prison.

 Goodwin estimated that he has had about one hundred and fifty sexual encounters,
approximately fifty of which occurred during his incarceration. Goodwin testified, "I know
for a fact that I'm not sexually attracted to children, but I will admit . . . that in the past I do
remember having some encounters, me and some teenage boys. . . . The victims that I
victimized, I found myself attracted to them." Goodwin testified he does not believe his
victims are at fault.

 Goodwin testified he is still capable of having erections, and he opined that he needs
continuing sex offender treatment to learn what his triggers are and how to manage them.
Goodwin testified that he has broken the cycle of addiction by participating in the sex
offender treatment program and through church support. Goodwin stated that he has engaged
in self-study and has taken correspondence courses regarding masturbation, homosexuality,
anger, sexual addiction, and religious studies. Goodwin also indicated that he no longer feels
out of control. Goodwin further testified that he intended to use the restroom before leaving
home, and he would have an "accountability partner" with him if he needed to use a public
restroom. He opined that when he is released from prison, he should stay away from
underage boys.

Goodwin's Issues


 In two issues, Goodwin challenges the factual sufficiency of the evidence supporting
the trial court's findings (1) that he suffers from a behavioral abnormality that makes him
likely to engage in a predatory act of sexual violence and (2) that he has serious difficulty
controlling his sexually violent behavior. We address these issues together.

 The SVP statute requires the State to prove beyond a reasonable doubt that Goodwin
is a sexually violent predator. See Tex. Health & Safety Code Ann. § 841.062(a) (Vernon
2003). Therefore, we apply the factual sufficiency standard used in criminal cases. In re
Commitment of Barbee, 192 S.W.3d 835, 839 (Tex. App.--Beaumont 2006, no pet.). In a
factual sufficiency review, we consider all of the evidence in a neutral light and determine
whether the evidence supporting "the verdict is too weak to support the finding of guilt
beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met." Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004); see also Zuniga v. State, 144 S.W.3d 477, 485-86
(Tex. Crim. App. 2004).

 Dr. Gaines testified that Goodwin suffers from both pedophilia and ADHD, and that
he is likely to reoffend. Dr. Gaines also testified that Goodwin had poor insight, poor
judgment, and lacked remorse. Dr. Gaines explained that additional risk factors were that
Goodwin's victims were strangers, the length of time over which the offenses occurred, the
age range of the victims, Goodwin's ADHD, and Goodwin's inability to abide by the
conditions of his probation. According to Dr. Gaines, the records she reviewed contained
statements by Goodwin that he would murder future victims and would seek revenge on
society. Dr. Gaines also stated that past behavior is the best indicator of future behavior, and
she believes Goodwin will have serious difficulty controlling his sexual urges.

 Goodwin testified that he is not sexually attracted to children, but he was attracted to
his teenage victims. Goodwin testified he is still capable of sexual arousal. In addition,
Goodwin admitted that he felt a sense of gratification when one of his victims saw him
masturbating. He admitted that he still needs treatment to learn how to manage his triggers. 
Goodwin also testified he no longer feels out of control, and he believes he has broken the
cycle of addiction by participating in the sex offender treatment program and through support
from his church.

 Having carefully reviewed all of the evidence in a neutral light, we find the evidence
supporting the trial court's findings is not too weak, nor is the contrary evidence, including
the direct testimony of Goodwin, so strong that the burden of proof could not be met. See
Threadgill, 146 S.W.3d at 664. The trial court was rationally justified in finding Goodwin
suffers from a behavioral abnormality that makes him likely to engage in predatory acts of
sexual violence and has serious difficulty controlling his sexual behavior. We overrule
Goodwin's issues and affirm the judgment of the trial court.

 AFFIRMED.


 

 STEVE MCKEITHEN

 Chief Justice


Submitted on September 14, 2006

Opinion Delivered October 26, 2006


Before McKeithen, C.J., Kreger and Horton, JJ. 
1. A Rule 11 agreement between the parties provides that any testimony presented by
videotaped deposition "shall be included in the record for purposes of appeal[.]" The State
played the videotaped testimony from page one to page forty-nine, line three of Goodwin's
deposition. Goodwin's counsel read into the record excerpts from pages 61, 65, 68, 70,
75, and 83. With the exception of page 49, which appears to have been partially redacted,
the entire deposition transcript is included in the record at the end of the exhibit volume;
however, the deposition was not offered and marked as an exhibit at trial. It is unclear
whether the parties intended Goodwin's entire deposition to be considered on appeal or
only those portions presented on videotape or read into the record. For purposes of this
appeal, we will consider only the particular portions of Goodwin's deposition that were
presented on videotape or read into the record at trial.