In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00403-CV

_____

IN RE COMMITMENT OF THOMAS FRANCIS FITZPATRICK

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-11-12506 CV**

**MEMORANDUM OPINION**

Thomas Francis Fitzpatrick appeals from a jury verdict that resulted in his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014). In three issues, Fitzpatrick contends that the evidence is factually insufficient to support the jury's verdict, that comments made by the trial court revealed judicial bias that denied him his right to have a fair trial in an impartial forum, and that the State's attorney, during summation, advanced arguments unsupported by the record that caused the jury to

1

reach an improper verdict. We conclude that Fitzpatrick's issues are without merit, and we affirm the judgment and order of civil commitment.

We address Fitzpatrick's second issue first. In issue two, Fitzpatrick asserts that the jury's verdict is not supported by factually sufficient evidence. According to Fitzpatrick, the conclusions of Dr. Lisa Clayton, the State's expert witness, are not supported by the evidence. Specifically, Fitzpatrick contends that Dr. Clayton had no basis to support her conclusion that Fitzpatrick is volitionally impaired or that he is likely to reoffend. Fitzpatrick also asserts that the testimony of his expert, Dr. Roger Saunders, demonstrates that the risk factors discussed by Dr. Clayton during her testimony were factors that were not relevant to his case.

In reviewing a factual sufficiency claim in an SVP case, we weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels our ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). However, the risk of an injustice arising from the weight of the evidence is necessarily slight when the jury uses a beyond-reasonable-doubt standard in deciding the case, and when the evidence admitted during the trial is legally sufficient to support the jury's verdict. *Id*. Nonetheless, "if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too

great to allow the verdict to stand, the appellate court may grant the defendant a new trial." *Id.*

In SVP cases, the State must prove the elements of its case beyond a reasonable doubt. *See* Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). In forming her opinions about Fitzpatrick, Dr. Clayton used the standards found in Chapter 841 of the Texas Health and Safety Code. Under the provisions of that chapter, a person can be found to be a "sexually violent predator" if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West Supp. 2014). A "'[b]ehavioral abnormality'" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "'Predatory act' means an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5) (West Supp. 2014).

On appeal, Fitzpatrick contends that Dr. Clayton's testimony was conclusory. We disagree with Fitzpatrick's view of the record. In our opinion, the evidence adduced at trial is factually sufficient to demonstrate that Dr. Clayton has

the qualifications relevant to testifying in a case involving the question of whether a person is a sexually violent predator, and her testimony reflects that her opinions were based on the evidence that is relevant to Fitzpatrick's case. During the trial, Dr. Clayton, who is board certified in general and forensic psychiatry, discussed her training and experience as related to evaluating whether a person has a behavioral abnormality. Dr. Clayton discussed the information she reviewed in Fitzpatrick's case, and she related the information she reviewed to her opinions. For example, the testimony shows that Dr. Clayton interviewed Fitzpatrick, reviewed records that are relevant to his sexual history, and reviewed records relevant to his prior convictions of offenses involving sexually violent crimes. The records Dr. Clayton reviewed are the types of records that experts in Dr. Clayton's field rely on in forming opinions. Dr. Clayton also explained that she performed her assessment in Fitzpatrick's case in a manner that is consistent with the training she had received as a professional.

Dr. Clayton also discussed how Fitzpatrick's records contributed to her opinions. For example, Dr. Clayton testified that she had relied on Fitzpatrick's prior convictions of sexually violent crimes to form her opinion that Fitzpatrick has a "behavioral abnormality." The evidence before the jury included Fitzpatrick's actuarial scores, and Dr. Clayton explained why she chose to discount his scores on

4

those tests in her evaluation. After Dr. Clayton explained her methodology and how she applied that methodology to Fitzpatrick, she expressed the opinion that Fitzpatrick has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We conclude that the opinions at issue on appeal were neither wholly conclusory nor were they without any foundation. *See In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 WL 1778254, at *2 (Tex. App.—Beaumont May 1, 2014, pet. denied) (mem. op.).

Fitzpatrick also complains that the evidence is not factually sufficient to support Dr. Clayton's testimony that he has a volitional impairment. However, Dr. Clayton's testimony that Fitzpatrick's pedophilia affects his volitional capacity is tied to facts in the record, as the records reviewed by Dr. Clayton reflect that Fitzpatrick does not know what causes his abnormal sexual behavior, and she suggests that his history shows that he has not had the ability or the inclination to control his abnormal behavior. According to Dr. Clayton, pedophilia is a chronic condition, and she explained that Fitzpatrick's sociopathic traits contributed to her opinions related to the risk that Fitzpatrick would likely reoffend. Dr. Clayton identified several risk factors that she thought were relevant to her opinion that Fitzpatrick would reoffend, and she noted that she did not find any factors, such as his completion of a program on sex offender treatment, that would mitigate against

Fitzpatrick's risk. According to Dr. Clayton, if released, Fitzpatrick would reoffend at some point because "he can't help it."

Fitzpatrick suggests that the evidence did not show that he had a serious difficulty controlling his behavior. However, whether a person suffers from an emotional or volitional defect so grave as to cause behavior that makes him a menace is included in the determination of whether he has "serious difficulty in controlling his behavior." *In re Commitment of Almaguer*, 117 S.W.3d 500, 505-06 (Tex. App.—Beaumont 2003, pet. denied). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *Id.* at 506. The jury could infer serious difficulty controlling behavior from Fitzpatrick's past behavior and from Dr. Clayton's testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *see also In re Commitment of Grinstead*, No. 09-07-00412-CV, 2008 WL 5501164, at *7 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.).

Fitzpatrick further argues that the testimony of his expert, Dr. Saunders, supports his conclusion that the evidence is factually insufficient to support the

jury's finding that he is a sexually violent predator. For example, Fitzpatrick asserts that Dr. Saunders's testimony indicates that Fitzpatrick is not likely to reoffend. Nevertheless, the jury was not required to agree with Fitzpatrick's expert in a case where the jury heard conflicting evidence on that subject. For instance, Dr. Saunders agreed that generally, pedophilia does not go away on its own. Dr. Saunders further acknowledged that Fitzpatrick had not had sex offender treatment.

In this case, the jury heard conflicting opinions from mental health experts relevant to whether Fitzpatrick is a sexually violent predator and regarding whether he is likely to reoffend. Dr. Saunders expressed the opinion that Fitzpatrick had a "very low risk[]" of reoffending; Dr. Clayton expressed the opinion that Fitzpatrick would likely reoffend. On this record, the evidence allowed the jury to draw reasonable inferences from basic facts to determine ultimate fact issues and to resolve conflicts and contradictions in the evidence by believing all, part, or none of the testimony. *See Grinstead*, 2008 WL 5501164, at *7. As the sole judge of the weight and credibility of the evidence, the jury apparently chose to accept the opinions of Dr. Clayton and to reject those offered by Dr. Saunders. *See In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied).

Based on the jury's findings, the jury implicitly determined that Fitzpatrick has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization. *See Muzzy*, 2014 WL 1778254, at *3. Weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that compels our ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule issue two.

In issue three, Fitzpatrick complains about several comments the trial court made during a pretrial scheduling conference and during trial. According to Fitzpatrick, these comments revealed the trial court was biased against him and that it was biased in favor of the State. Fitzpatrick concludes several of the comments require that we conclude he was denied a fair trial before an impartial tribunal.

We examine the comments at issue in the context of the entire record. *See In re Commitment of Barbee*, 192 S.W.3d 835, 848 (Tex. App.—Beaumont 2006, no pet.). Whether a trial court's comments reveal bias are issues that are reviewed as presenting a question of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). In conducting a trial, a court has a significant amount of discretion and may "express itself in exercising this broad discretion." *Id.* at 240-41. "A trial court has inherent power to control the disposition of cases with economy of time and effort,

8

exercising that power without bias and with patience, and in a manner that promotes confidence in the judge's impartiality." *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). "Generally, Texas law imputes good faith to a trial judge's judicial actions in controlling a trial." *Barbee*, 192 S.W.3d at 847. "'[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Francis*, 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

On appeal, the complaining party must show that the comments were improper, and then show that the improper comments prejudiced the complaining party. *Barbee*, 192 S.W.3d at 847. We must examine the record to determine whether the complaint was preserved for review on appeal. *Id.* With respect to a complaint asserting the trial court made an improper comment showing bias, the complaining party must object when the comment occurs and request an instruction to cure the complaint when the comment occurred, unless a proper instruction would not have rendered the comment harmless. *Francis*, 46 S.W.3d at 241.

During trial, the record does not show that Fitzpatrick objected to the comments at issue when they occurred. Additionally, the comments at issue, in our

9

opinion, did not reveal what the trial court might have thought about the merits of Fitzpatrick's case. Instead, the comments show the trial court desired to timely dispose of Fitzpatrick's case. To the extent the comments can be construed as unduly critical of counsel's tactics, any harm from the comments at issue could have been resolved when the comments occurred, had Fitzpatrick requested appropriate instructions about the comments which are the subject of Fitzpatrick's complaints. By failing to timely object and request appropriate instructions in response to the comments when they were made, Fitzpatrick failed to preserve his complaints for review on appeal. *See* Tex. R. App. P. 33.1; *Francis*, 46 S.W.3d at 241.

Fitzpatrick also complains about several comments the trial court made during a pretrial scheduling conference. The comments that occurred at the scheduling conference are not the type of comments that raise any question about the trial court's qualifications to serve; rather, Fitzpatrick contends the comments reflect a bias that required the trial court to be recused. *Compare* Tex. R. Civ. P. 18b(a), *with* Tex. R. Civ. P. 18b(b); *see Merendino v. Burrell*, 923 S.W.2d 258, 262 (Tex. App.—Beaumont 1996, writ. denied) (noting the distinction between motions to disqualify and motions to recuse).

Complaints that concern recusal can be waived if the party suggesting the trial court was subject to recusal fails to timely file appropriate motions presenting the issue within the time required by Rule 18b of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 18b(e). In Fitzpatrick's case, the pretrial conference took place approximately seven months before trial. The record shows that Fitzpatrick failed to object when the comments occurred. Prior to trial, Fitzpatrick failed to file a motion asking that the trial court be recused. *See Janicek & Ol'Don, Inc. v. Kikk Inc.*, No. C14-94-00228-CV, 1995 WL 227929, at *1 (Tex. App.—Houston [14th Dist.] Apr. 13, 1995, writ. denied) (not designated for publication) (noting that the appropriate vehicle to preserve a complaint claiming the judge should be recused for bias is a motion to recuse).

We conclude the record shows that Fitzpatrick failed to preserve his complaints about the comments the trial court made during the scheduling conference for appellate review. *See* Tex. R. Civ. P. 18a(a), (b)(1)(A); Tex. R. Civ. P. 18b(e). We overrule issue three.

In issue one, Fitzpatrick complains the State's attorney, in summation, argued that Fitzpatrick might have offended against other children who never reported the crimes. According to Fitzpatrick, the State's argument was improper, and probably resulted in an improper verdict. *See* Tex. R. App. P. 44.1(a)(1).

11

Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law. *See generally* Tex. R. Civ. P. 269(b), (e); *see also Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Arguments that are presented to juries in summation are to be confined "strictly to the evidence and to the arguments of opposing counsel." Tex. R. Civ. P. 269(e). To obtain a reversal based on an error that arises during jury argument, the appellant must show "'(1) an error[,] (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge.'" *In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979)).

The record shows that when the State's attorney presented his closing arguments, Fitzpatrick's attorney did not object to the State's argument referencing the existence of other victims. Moreover, there was evidence admitted before the jury showing that Fitzpatrick had committed additional sexual offenses other than those which formed the bases of his convictions. During the trial, Dr. Clayton

testified that based on her clinical experience, her evaluation of Fitzpatrick, and her review of the records in the case, Fitzpatrick did not wait until the age of "38 or 42" to start offending; rather, in Dr. Clayton's opinion, that is just when Fitzpatrick got caught. Dr. Clayton also testified that she "fully believe[s] Mr. Fitzpatrick has left a large wake of other victims." Dr. Clayton and Dr. Saunders both testified that Fitzpatrick had two convictions; however, the experts also agreed that the records they reviewed indicated that Fitzpatrick had three victims.

Because the argument the State's attorney presented to the jury about other victims finds support in the evidence that was before the jury, the argument Fitzpatrick complains about in his appeal was not improper. *See In re Commitment of Dodson*, 434 S.W.3d 742, 751 (Tex. App.—Beaumont 2014, pet. filed). Having concluded the State's attorney's argument about other victims was not error, we overrule issue one.

Having carefully reviewed the issues that Fitzpatrick presents in his appeal, the trial court's judgment and order of civil commitment are affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on July 29, 2014
Opinion Delivered November 13, 2014
Before McKeithen, C.J., Kreger and Horton, JJ.

13