In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-066 CV


____________________



IN RE THE COMMITMENT OF ALEXANDER BARRERA







On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 05-06-05419-CV






MEMORANDUM OPINION


 The trial court ordered the civil commitment of appellant Alexander Barrera after the
jury found him to be a sexually violent predator ("SVP"). See Tex. Health & Safety Code
Ann. §§ 841.001-841.150 (Vernon 2003 & Supp. 2006). The SVP statute defines "sexually
violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers
from a behavioral abnormality that makes the person likely to engage in a predatory act of 
sexual violence." Id. at § 841.003. The statute defines "behavioral abnormality" as "a
congenital or acquired condition that, by affecting a person's emotional or volitional
capacity, predisposes the person to commit a sexually violent offense, to the extent that the
person becomes a menace to the health and safety of another person." Id. at § 841.002(2). 
In this appeal, Barrera challenges the legal and factual sufficiency of the evidence supporting
the trial court's findings that he suffers from a behavioral abnormality that makes him likely
to engage in a predatory act of sexual violence. We affirm.

The State's Evidence


 The State played Barrera's videotaped deposition at trial. Barrera testified that he was
convicted of indecency with a child in 1988, and he was twice convicted of indecency with
a child - sexual contact. According to Barrera, the three female victims of the 1988 offense
were children he had met through his son. Barrera testified that the three victims were eight,
ten, and twelve years of age, and he fondled their vaginas, buttocks, and breasts. Barrera
gained the trust of the victims and the victims' mother by meeting and talking with the
mother. Barrera testified that he touched the victims inappropriately approximately once a
week for about three months, and he described his arousal level as medium to high. Barrera
explained that he was sexually attracted to the victims when the offenses occurred, and he
later thought of the victims while masturbating at home.

 Barrera testified that his next conviction for a sexual offense occurred in 1997, when
he touched the genitals of two boys he was baby-sitting. Barrera explained that he knew the
victims through one of his wife's friends. He described his level of arousal as medium to
high, and he testified that he had thought of the victims while masturbating at home
immediately after the offenses.

 Barrera testified that he has previously had problems with alcohol, but he was not
under the influence when he committed the offenses. Barrera explained that he has never
attended alcohol treatment, but he believes he needs to do so. Barrera testified that he was
currently participating in the sex offender treatment program ("SOTP"). Barrera stated, "I
feel that I need to stay away from [children] but I could be with them with other adults
around. I don't want to isolate myself with children." Barrera further explained, "I plan on
refraining from sexual offenses by having a good support group with family, also going to
continue my treatment, going to classes, and taking all the necessary precautions that I've
learned through . . . the SOTP program. . . ." Barrera also testified that although he
previously had sexual fantasies about children, he does not currently have such fantasies.
Barrera explained that he feels that he can control his sexual behavior.

 The State next called board-certified psychiatrist Dr. Michael Arambula to testify at
trial. Dr. Arambula testified that he interviewed Barrera for approximately two hours. 
Before interviewing Barrera, Dr. Arambula reviewed Barrera's evaluation by psychologist
Dr. Michael Gilhousen; records from TDCJ; evaluations; medical records; medical, social,
psychiatric, and sexual history; school records; and sex offender treatment records. Dr.
Arambula noted that there were some inconsistencies between the information Barrera
provided regarding his substance abuse history and what the records reflected.

 Dr. Arambula diagnosed Barrera with pedophilia and "alcohol dependence in
remission." Dr. Arambula testified that Barrera "needs an intensive treatment for both in
order to keep our community safe and to keep his autonomy intact." Dr. Arambula explained
that he had no hesitation about diagnosing Barrera with pedophilia because "[w]e're talking
about five kids; and after molesting them, he sealed it by masturbating to that experience. 
That's a sexual attraction." Dr. Arambula testified that the fact that Barrera's last two
victims were male was "a negative prognostic factor" because offenders who victimize
young males are more likely to reoffend. Dr. Arambula testified that past behavior is a good 
predictor of future behavior. When asked what risk factors for recidivism most concerned
him about Barrera, Dr. Arambula testified,

 He needs more treatment. That's the primary one. And associated with
treatment is the level of denial. I believe that associated with treatment, the
offense particulars, like for instance the boys, that needs to be hammered more
in treatment. That will take some time.


 Aside from that, his alcohol abuse or dependence . . . because it
disinhibits people.


 His plans were . . . unrealistic. He wasn't specific about what he
wanted to do.


 . . . .


 The . . . trouble he's gotten himself into, even while on parole or
probation, supervised release, that's not a good sign. That infers that he needs
more structure.


According to Dr. Arambula, "[A]s long as the treatment program is structured, . . . [Barrera
will] do okay. Without the structure, no." Dr. Arambula testified that Barrera's history
demonstrates Barrera has problems controlling his sexual urges and is a danger to society. 
Dr. Arambula also testified that he believes Barrera has a behavioral abnormality that makes
him likely to engage in predatory acts of sexual violence.

 The State next called psychologist Michael Gilhousen, Ph.D. Dr. Gilhousen testified
that he reviewed Barrera's criminal history and TDCJ records, and he interviewed Barrera
for approximately two hours. Dr. Gilhousen testified that Barrera "admitted that he had the
fantasies and urges for children." According to Dr. Gilhousen, both Barrera's history of
alcohol abuse and his violations of probation and parole place him at greater risk of
recidivism. Dr. Gilhousen also testified that he believes past behavior is a good predictor of
future behavior. Dr. Gilhousen explained that he also performed several actuarials on
Barrera, including the Static '99, the Minnesota Sex Offender Screening Tool-Revised
(MSOST-R), and the Hare Psychopathy Checklist. Dr. Gilhousen testified that Barrera's
scores on the Static '99 and MSOST-R indicated Barrera is at a high risk for reoffending.
According to Dr. Gilhousen, Barrera "did not score high on [the Hare Psychopathy
Checklist], which is not surprising, because most pedophiles don't."

 Dr. Gilhousen testified that he diagnosed Barrera with pedophilia, alcohol abuse,
marijuana abuse, and "a personality disorder with antisocial features." Dr. Gilhousen also
testified that he found that Barrera has a behavioral abnormality that makes it likely that he
will engage in a predatory act of sexual violence. Dr. Gilhousen explained that Barrera's risk
factors for reoffending included his three convictions for sex offenses involving children; the
wide age range of his victims; Barrera's violation of the terms of supervised release; and the
fact that Barrera offended against male victims. Dr. Gilhousen testified that Barrera has a
problem controlling his sexual urges, and Barrera is "more likely than the average pedophile"
to reoffend in a sexually violent manner. Dr. Gilhousen explained that without supervision,
Barrera "definitely could be" a danger to society.

 The State also read some of Barrera's responses to requests for admissions into
evidence. In his responses, Barrera admitted that he has not sought the help of a mental
health professional; he fantasized about his victims before assaulting them; the State's only
requirement upon his release from prison is that he register as a sex offender; he was cited
for disciplinary infractions while incarcerated; he committed offenses while on supervision;
he offended in a sexual manner while attending sex offender treatment; and he had attended
sex offender treatment for more than one year when he reoffended. The State then rested. 



Barrera's Evidence


 Barrera called Dr. Antoinette McGarrahan, a clinical psychologist, to testify. Dr.
McGarrahan testified that she conducted a two-hour clinical evaluation of Barrera. Dr.
McGarrahan also independently scored Barrera on the MSOST-R, Static '99, and Hare
Psychopathy Checklist-Revised, and she reviewed Barrera's Bozarth file. (1) Based upon her
evaluation, Dr. McGarrahan concluded that Barrera "did not meet the statute as a sexually
violent predator," and she characterized his risk of reoffending as "moderate." When asked
to elaborate on what she meant by characterizing Barrera's risk of reoffending as "moderate,"
Dr. McGarrahan explained, "By that, I'm basically saying that I don't feel that it reaches the
required definition of 'likely,' that the individual is predisposed and likely to commit a sexual
act of violence after release or discharge." Dr. McGarrahan testified that Barrera expressed
knowledge and understanding of the long-term consequences the victims of his offenses
would suffer. Dr. McGarrahan testified, "I've performed approximately 30 to 31 of these
evaluations now, and I have yet to see that sort of response from an individual who
understands the different facets of consequences, including financial, emotional, physical
relationship-wise." Dr. McGarrahan opined that Barrera's understanding of the
consequences to his victims was "likely the direct result of the treatment program[.]"

 According to Dr. McGarrahan, the fact that Barrera reoffended while on probation
"shows an individual who may have difficulty, even under supervision, staying out of trouble
with the law." Dr. McGarrahan testified that Barrera denied having current fantasies about
children, but that Barrera did have such fantasies when he committed the offenses. Dr.
McGarrahan testified that she administered the Static '99, which measures recidivism for
sexual offenses, to Barrera, and she felt Barrera's results indicated "a moderate to moderate
high risk [of] recidivism." According to Dr. McGarrahan, Barrera's scores on the MSOST-R
that she administered indicated a low risk for sexual recidivism. Dr. McGarrahan testified
that she administered the Hare Psychopathy Checklist-Revised to Barrera, and his results
indicated a "low level of psychopathic traits." Dr. McGarrahan testified that Barrera's results
on each of the actuarials that she administered are consistent with her overall evaluation of
Barrera.

 When asked to discuss her diagnosis of Barrera, Dr. McGarrahan testified, "I did feel
that Mr. Barrera met the criteria for pedophilia. In my opinion, it is in remission. He also
had a history of alcohol abuse and possibly borderline intellectual functioning." Dr.
McGarrahan testified that Barrera does not have a behavioral abnormality, and she does not
believe Barrera is likely to engage in predatory acts of sexual violence. On cross-
examination, Dr. McGarrahan explained that "Pedophila can or cannot be a behavioral
abnormality. It doesn't necessarily equate with behavioral abnormality." Dr. McGarrahan
further explained that because Barrera's scores on the actuarials indicated he was at a low
risk for reoffending, she did not believe Barrera is likely to reoffend in a sexually violent
manner. When asked whether she understood that the definition of "likely" is "probable or
beyond a mere possibility," Dr. McGarrahan testified that she did not believe Barrera is likely
to reoffend, but she indicated she believes there is more than a mere possibility that he will
reoffend. Dr. McGarrahan also testified, "I don't believe that leaving [Barrera] with children
is a very good idea."

 Barrera also called psychologist Dr. Tim Branaman to testify. Dr. Branaman testified
that he met with Barrera for approximately three hours and fifteen minutes. Prior to the
interview, Dr. Branaman reviewed Barrera's Bozarth file. According to Dr. Branaman,
Barrera has accepted responsibility for his offenses. Dr. Branaman testified that Barrera's 
current fantasies involve only adult females, and Barrera's sex drive is currently minimal.

 Dr. Branaman testified that he administered the Static '99, MSOST-R, and Hare
Psychopathy Checklist to Barrera. According to Dr. Branaman, if Barrera successfully
completes treatment, Barrera has less than a thirty-three percent probability of reoffending.
On cross-examination, Dr. Branaman further explained that he characterized Barrera's
likelihood of reoffending as "low/moderate to high/moderate." Dr. Branaman testified that
he considered Barrera's probation violations, but he "put the greatest weight" on the results
of the actuarials. When asked whether he felt Barrera was likely to reoffend, with "likely"
defined as "probable or beyond a mere possibility," Dr. Branaman explained, "If we're
applying that stipulation, then it would be likely that anybody that's been charged with or
convicted of a new sexual offense would reoffend. And if that's what you're asking me, then
I would have to agree that that would be yes."

 Dr. Branaman testified that he diagnosed Barrera with pedophilia, but Barrera's
history did not indicate impulsivity. Dr. Branaman explained, "I believe that [Barrera] has
the capability of controlling his sexual urges, and I believe that the acts which he committed
. . . were essentially the choices that he made at that point in time. I did not find those to be
due to compulsion."

Barrera's Issues


 In two issues, Barrera challenges the legal and factual sufficiency of the evidence that
he suffers from a behavioral abnormality that makes him likely to engage in a predatory act
of sexual violence. We address issues one and two together. The SVP statute requires the
State to prove beyond a reasonable doubt that Barrera is a sexually violent predator. See
Tex. Health & Safety Code Ann. § 841.062 (Vernon 2003). Therefore, we apply the
standard of review used in criminal cases for legal sufficiency of the evidence. See In re
Commitment of Mullens, 92 S.W.3d 881, 885 (Tex. App.--Beaumont 2002, pet. denied)
(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In
addressing legal sufficiency issues, we review all of the evidence in the light most favorable
to the verdict to determine whether a rational jury could have found beyond a reasonable
doubt that Barrera suffers from a behavioral abnormality that makes him likely to engage in
a predatory act of sexual violence. See id.; Tex. Health &Safety Code Ann. § 841.003. 

 When addressing an issue of factual sufficiency, the appellate court asks whether "a
neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

 As part of his legal sufficiency argument, Barrera contends that the testimony offered
by Drs. Arambula and Gilhousen was incompetent evidence because it was speculative and
conclusory. Citing Coastal Transport Co. v. Crown Central Petroleum Corp., 136 S.W.3d
227, 233 (Tex. 2004), Barrera asserts he did not need to object to the allegedly speculative
or conclusory expert testimony. We disagree. When the complaint concerns the foundational
data used or relied upon by an expert, a party must present a timely objection to the trial court
to preserve any complaint for appeal. See Tex. R. App. P. 33.1; Tex. R. Evid. 103; In re
Commitment of Barbee, 192 S.W.3d 835, 843 (Tex. App.--Beaumont 2006, no pet.).

 Dr. Arambula testified, without objection, that he diagnosed Barrera as suffering from
pedophilia and alcohol dependence in remission. Dr. Gilhousen testified, without objection,
that he diagnosed Barrera with pedophilia, alcohol abuse, marijuana abuse, and "a personality
disorder with antisocial features." Dr. Arambula testified that Barrera has problems
controlling his sexual urges and is a danger to society, and he believes Barrera has a
behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. 
Dr. Gilhousen also testified that Barrera has a behavioral abnormality that makes it likely that
he will engage in a predatory act of sexual violence. Dr. Gilhousen testified that Barrera has
a problem controlling his sexual urges, and he characterized Barrera as "more likely than the
average pedophile" to reoffend in a sexually violent manner.

 Since the jury heard the expert testimony of Drs. Arambula and Gilhousen without
objection, the jury was free to believe or disbelieve their testimony, and they chose to believe
it. Having carefully reviewed the record in the light most favorable to the trial court's
judgment, we find the evidence is legally sufficient. We also find the evidence is factually
sufficient under the relevant standards of review. Having carefully reviewed all of the
evidence in a neutral light, we find the evidence supporting the verdict is not too weak, nor
is the contrary evidence, including the testimony of Barrera, Dr. McGarrahan, and Dr.
Branaman, so strong that the burden of proof could not be met. The jury was rationally
justified in finding Barrera suffers from a behavioral abnormality that makes him likely to
engage in predatory acts of sexual violence. We overrule issues one and two and affirm the
judgment of the trial court.

 AFFIRMED. 



 ________________________________

 STEVE MCKEITHEN

 Chief Justice 

Submitted on November 24, 2006

Opinion Delivered December 28, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Dr. McGarrahan testified that the Bozarth file included Dr. Gilhousen's assessment
of Barrera, TDCJ's scoring of Barrera on the Static '99 and MSOST-R, and materials
regarding Barrera's offenses, social history, and IQ scores.