In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-020 CV


____________________



IN RE THE COMMITMENT OF LARRY CORDER


 





On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-06-05384-CV






MEMORANDUM OPINION


 The trial court found appellant Larry Corder to be a sexually violent predator ("SVP")
and ordered his civil commitment. See Tex. Health & Safety Code Ann. §§ 841.001-.150
(Vernon 2003 & Supp. 2006). The SVP statute defines "sexually violent predator" as a
person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral
abnormality that makes the person likely to engage in a predatory act of sexual violence." 
Id. § 841.003. The statute defines "behavioral abnormality" as "a congenital or acquired
condition that, by affecting a person's emotional or volitional capacity, predisposes the
person to commit a sexually violent offense, to the extent that the person becomes a menace
to the health and safety of another person." Id. § 841.002(2). In two issues, Corder
challenges the legal and factual sufficiency of the evidence supporting the trial court's
findings that he suffers from a behavioral abnormality that makes him likely to engage in a
predatory act of sexual violence. We affirm.

The Evidence


 Both Corder and the State offered portions of Corder's deposition testimony at trial.
Corder testified that he was twice convicted of indecency with a child, and he also testified
that as a juvenile, he vaginally raped his five-year-old stepsister. Corder testified that he also
engaged in anal intercourse with his stepsister. Corder was placed in juvenile detention, and
he was eventually placed on probation. When Corder was nineteen years old, he removed
a five-year-old girl's clothes and rubbed against her buttocks with his penis. Corder pleaded
guilty to the indecency with a child offense and was sentenced to ten years of probation. 
Corder did not successfully complete his probation because he subsequently pleaded guilty
to arson. When Corder pleaded guilty to arson, he was sentenced to five years of
confinement. Corder's probation for the indecency with a child offense was also revoked,
and he was sentenced to eight years of confinement. 

 After serving part of his sentence, Corder was released on parole, but while he was
on parole, he touched the crotch of a five-year-old boy and was convicted of indecency with
a child by contact. Corder testified that he was also convicted of aggravated sexual assault
for placing his finger inside the anus of a four-year-old girl. Corder opined that he could
control himself, but he chose not to control himself when he committed the offenses. Corder
explained that he chose not to control himself because he "didn't see the harm that [he] was
inflicting upon the victims." Corder testified that he now believes he harmed the children,
and he partially attributed this insight to his participation in the Sex Offender Treatment
Program ("SOTP"). However, Corder testified that although he had asked to participate in
the SOTP, he is not currently participating, and he did not complete the program when he
was enrolled previously. He did complete three phases of drug and alcohol treatment in
prison. Corder testified that his fantasies are currently "age appropriate," and he has stopped
watching anything on television other than the news. Corder also testified that he participates
in "Tex Cure Sort", a support group "dealing specifically with Texas sex offenders and
treatment." Corder further testified that upon his release, he would immediately contact
MHMR for treatment. Corder testified, "Because of my tendencies that I used to have, it's
best for me to stay away [from children]. It's as simple as that. There is an offense cycle,
and if there are a lot of triggers placed on me at one time and I don't have somebody that I
can be accountable to then, yes, I could [reoffend]." 

 The State next called board-certified psychiatrist Dr. Lisa Clayton to testify at trial.
Dr. Clayton testified that she interviewed Corder for two to three hours. Dr. Clayton
reviewed Corder's multidisciplinary referral packet, pen packet with disciplinary records,
educational records from TDCJ, sex offender treatment records from TDCJ, and medical
records from TDCJ. Based upon her interview with Corder and her review of his records,
Dr. Clayton opined that Corder has a behavioral abnormality that makes him likely to
reoffend. 

 Dr. Clayton testified that she diagnosed Corder as suffering from pedophilia, alcohol
abuse, and antisocial personality disorder. Dr. Clayton explained that she used the DSM-IV-TR guidelines in diagnosing Corder with pedophilia, and she based the diagnosis upon
Corder's longstanding history of molesting young children, as well as the fact that he still had
fantasies about his victims at the time of the interview. Dr. Clayton also utilized the DSM-IV-TR criteria in diagnosing Corder with antisocial personality disorder. She explained that
antisocial personality disorder involves "a pattern throughout adolescence and adulthood [of]
using others, manipulating them; breaking laws; unstable work history; I guess criminal-type
behavior; impulsivity; failure to plan ahead, like deceitfulness, manipulation." According
to Dr. Clayton, Corder met the criteria for antisocial personality disorder because he
repeatedly broke the law, showed irresponsibility, had a "spotty work history," and lacked
remorse. 

 Dr. Clayton explained that Corder also met the DSM-IV-TR criteria for alcohol abuse
because "he had an admitted history of abusing alcohol, getting so drunk he would miss work
. . . and . . . he said he had committed some of his offenses while he was drinking." Dr.
Clayton testified that although Corder had received substance abuse education in TDCJ, he
had not received treatment for substance abuse. Dr. Clayton also noted that although Corder
received sex offender treatment for a few months after his incarceration, he quit the program
after four months because he "felt like he was being attacked by peers and counselors and
that the counselors wanted him to admit to things that he couldn't admit to." 

 Although Dr. Clayton testified that she is not an expert on actuarial instruments, she
reviewed the actuarials pertaining to Corder, and the actuarials factored in "a small part" of
her opinion. Dr. Clayton testified that Corder has a "lifelong pattern of offending," and he
lacks any genuine remorse or empathy for his victims. She also testified that she felt Corder
minimized some of his offenses. Dr. Clayton identified the following as Corder's risk factors
for reoffending: "The fact that he has offended sexually against children since about the age
of 13; he has continued to offend even after being in juvenile prison and then in adult prison;
that he still admits to having fantasies of his victims, which are children[.]" She also testified
that past behavior is the best indicator of future behavior. Dr. Clayton noted that Corder said
he would reoffend if the circumstances were "right" and trigger events were present. Dr.
Clayton also testified that "unfortunately, he's going to be getting out of TDC without . . .
any real resources. And I think that could send him spiraling down very quickly. The
drinking . . . may be a source of something that he uses to numb his feelings; and then once
that starts, then I think he'll be out of control with his pedophilia." Dr. Clayton testified that
Corder has a behavioral abnormality that makes him likely to engage in predatory acts of
sexual violence, and he will have difficulty controlling his sexual behavior. 

Corder's Issues


 In two issues, Corder challenges the legal and factual sufficiency of the evidence that
he suffers from a behavioral abnormality that makes him likely to engage in a predatory act
of sexual violence. We address issues one and two together. The SVP statute requires the
State to prove beyond a reasonable doubt that Corder is a sexually violent predator. Id. §
841.062. Therefore, we apply the standard of review used in criminal cases for legal
sufficiency of the evidence. See In re Commitment of Mullens, 92 S.W.3d 881, 885 (Tex.
App.--Beaumont 2002, pet. denied) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)). In addressing legal sufficiency issues, we review all of the
evidence in the light most favorable to the verdict to determine whether a rational jury could
have found beyond a reasonable doubt that Corder suffers from a behavioral abnormality that
makes him likely to engage in a predatory act of sexual violence. See id; Tex. Health &
Safety Code Ann. §841.003. We also apply the factual sufficiency standard used in
criminal cases. When addressing an issue of factual sufficiency, the appellate court asks
whether "a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also King
v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

 As part of his legal sufficiency argument, Corder contends that "[t]he State's expert's
testimony was conclusory, unsubstantiated speculation." Citing Coastal Transport Co. v.
Crown Central Petroleum Corp., 136 S.W.3d 227, 233 (Tex. 2004), and General Motors
Corp. v. Iracheta, 161 S.W.3d 462, 470-71 (Tex. 2005), Corder asserts he was not required
to object to expert testimony he asserts was speculative or conclusory, and he requests that
we reconsider our holding to the contrary. See In re Commitment of Hall, No. 09-05-482-CV, 2006 WL 1682194 (Tex. App.--Beaumont June 15, 2006, no pet.)(mem. op.). When the
complaint concerns the foundational data used or relied upon by an expert, a party must
present a timely objection to the trial court to preserve any complaint for appeal. See Tex.
R. App. P. 33.1; Tex. R. Evid. 103; In re Hall, 2006 WL 1682194 at *5; In re Commitment
of Barbee, 192 S.W.3d 835, 843 (Tex. App.--Beaumont 2006, no pet.). We considered this
argument in Hall, and we decline Corder's invitation to overrule Hall. See In re Hall, 2006
WL 1682194, at *5. 

 As discussed above, Dr. Clayton testified that she diagnosed Corder as suffering from
pedophilia, antisocial personality disorder, and alcohol abuse and she explained the basis for
each diagnosis. Dr. Clayton also opined that Corder will have difficulty controlling his
sexual behavior, and she testified that Corder stated he would reoffend if the circumstances
were right and trigger events were present. Dr. Clayton testified that Corder has a behavioral
abnormality that makes him likely to engage in predatory acts of sexual violence, he will
have difficulty controlling his sexual behavior, and he is likely to reoffend. She identified
Corder's alcohol abuse, his long history of sexual offenses against children, the fact that he
continued to offend even after being incarcerated, and Corder's fantasies about his young
victims as risk factors for reoffending. 

 The trial court was free to believe or disbelieve Dr. Clayton's expert testimony, and
the court chose to believe it. Having carefully reviewed the record in the light most favorable
to the trial court's judgment, we find the evidence is legally sufficient. We also find the
evidence is factually sufficient under the relevant standards of review. Having carefully
reviewed all of the evidence in a neutral light, we find the evidence supporting the verdict
is not too weak, nor is the contrary evidence so strong that the burden of proof could not be
met. The trial court was rationally justified in finding that Corder suffers from a behavioral
abnormality that makes him likely to engage in predatory acts of sexual violence. We
overrule issues one and two and affirm the judgment of the trial court.

 AFFIRMED.


 _________________________________ 
 CHARLES KREGER

 Justice

Submitted on October 19, 2006

Opinion Delivered December 21, 2006


Before Gaultney, Kreger, and Horton, JJ.