In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-09-00005-CV


____________________



IN RE COMMITMENT OF KENNETH FIELDS







On Appeal from the 435th District Court


Montgomery County, Texas


Trial Cause No. 08-03-02387 CV






MEMORANDUM OPINION



 A jury determined that Kenneth Fields is a sexually violent predator. See Tex.
Health & Safety Code Ann. § 841.003 (Vernon 2003). Fields appeals from the trial
court's judgment and order of civil commitment. He raises three issues. 

 In 1979, Fields used a knife to abduct a woman; he threatened to kill her, struck her,
and raped her twice on the same day. Fields testified that a few weeks later he threatened
two other women with a knife and abducted them. He explained he did not sexually assault
them, because the car he was driving was involved in an accident, and a DPS officer arrived
at the scene. In 1979, he used a knife to abduct a woman from an apartment complex,
threatened to kill her, and raped her. He was convicted and sent to prison. Fields
acknowledged that in 1985, seven months after he was released from prison, he sexually
assaulted another woman; that assault went undetected. A few weeks later he used a pellet
gun to abduct a sixteen-year-old girl and her boyfriend off the seawall in Galveston. Fields
ordered the male out of the car, took the female to a secluded location, and sexually assaulted
her. Fields's mandatory supervision was revoked, and he was sent back to prison. Released
on mandatory supervision in 2000, he violated the terms of the supervision within four
months and was again returned to prison. The record reveals Fields acknowledged multiple
sexual assaults. 

 In issue one, Fields argues the trial court, the Ninth Court of Appeals, and the Texas
Supreme Court denied him effective assistance of counsel and violated his due process rights,
because State Counsel for Offenders ("SCFO") was not allowed to withdraw as his counsel. 
The SCFO attempted to withdraw as counsel both at trial and on appeal. We previously
rejected similar complaints by Fields in two mandamus proceedings that he filed with this
Court; we see no reason to revisit those decisions. See In re Fields, No. 09-09-00202-CV,
2009 WL 2045219 (Tex. App.-- Beaumont July 16, 2009, orig. proceeding); In re Fields, 256
S.W.3d 859 (Tex. App.-- Beaumont 2008, orig. proceeding). Issue one is overruled.

 In issue two, Fields argues the evidence is legally insufficient to support the jury's
finding that he suffers from a behavioral abnormality, as defined in section 841.002(2) of the
Act. The Act defines "behavioral abnormality" as "a congenital or acquired condition that,
by affecting a person's emotional or volitional capacity, predisposes the person to commit
a sexually violent offense, to the extent that the person becomes a menace to the health and
safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp.
2009).

 Although this is a civil case, we consider legal sufficiency issues under the standard
of review for criminal cases because of the burden of proof in this case. In re Commitment
of Mullens, 92 S.W.3d 881, 885 (Tex. App.--Beaumont 2002, pet. denied) (citing Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We review the
evidence, in the light most favorable to the verdict, to determine if a rational jury could have
found beyond a reasonable doubt that Fields suffers from a behavioral abnormality that
makes him likely to engage in a predatory act of sexual violence. Id. at 885, 887. 

 Fields essentially argues that the State's experts' testimony did not provide a basis for
their opinions, and there is no probative evidence to support the jury's finding of a behavioral
abnormality. Consequently, Fields argues he did not have to object to the State's experts'
testimony at trial. 

 The Texas Supreme Court has held that "conclusory opinions are legally insufficient
evidence to support a judgment even if the party did not object to the admission of the
testimony." City of San Antonio v. Pollock, 284 S.W.3d 809, 816 (Tex. 2009) (citing Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004)). "Bare,
baseless opinions will not support a judgment even if there is no objection to their admission
in evidence." Id. Nevertheless, if the expert's opinion has a supporting basis, but there is
a reliability challenge to the basis which requires the trial court to evaluate the underlying
methodology, an objection "'must be timely made so that the trial court has the opportunity
to conduct this analysis.'" Pollock, 284 S.W.3d. at 817 (quoting Coastal Transp. Co., 136
S.W.3d at 233).

 In considering whether the State's evidence amounts to "bare, baseless opinions," we
review the entire record -- focusing on the experts' testimony. Three experts testified: Dr.
Proctor and Dr. Clayton for the State and Dr. Shursen for the defendant. The record reveals
the State's experts employed essentially the same bases and methodology, which they
described as being relied on by other experts in their fields. Dr. Shursen relied on similar,
if not the same, information and administered the same assessment tests to Fields as Dr.
Proctor. Each expert interviewed Fields prior to formulating an opinion. 

 Dr. Proctor, a forensic psychologist, explained how he arrived at his opinion that
Fields suffers from a behavioral abnormality. After obtaining the available records on Fields,
Proctor reviewed Fields's history, his past offenses, victims' statements, police descriptions,
prison records, summaries regarding the time spent in prison, and prison medical records. 
Proctor also interviewed Fields. 

 Using the DSM-IV, a book used by mental health professionals to diagnose
psychological conditions, Dr. Proctor diagnosed Fields with antisocial personality disorder,
sexual abuse of an adult, sexual abuse of a child, and sexual sadism. Proctor explained
Fields was sexually gratified by causing physical or psychological pain or humiliation to
another person. Proctor also testified that Fields was stimulated by causing fear in another
person and that he has an inability to control anger. Proctor further explained that Fields has
a "very ingrained pattern of committing a similar type of sex offense, a rape, with similar
type of victim, force, weapon, repeatedly that persisted even when imprisoned once before
and even when on mandatory supervision." Other negative factors included the fact that
Fields had no stable adult relationships, and his history revealed adolescent anti-social
behavior, a history of substance abuse, physical abuse in his relationships, anger, and a lack
of empathy. 

 In addition to reviewing the records, Proctor administered three tests to Fields: the
Hare Psychopathy Checklist, the Static-99, and the Minnesota Sex Offender Screening Tool-Revised (MnSOST). Based on Fields's responses on the Hare test, Proctor concluded Fields
was not a psychopath. On the Static 99 and the MnSOST (risk assessment instruments), Dr.
Proctor scored Fields's risk for future sex offending as high. The high scores were based on
Fields's use of a weapon during the offenses, his threats-to-kill the victims, use of force and
violence, commission of multiple sex acts on the same victim, ejaculation inside the victim,
and sexual assaults on victims who were both non-relatives and strangers. 

 In reviewing Fields's records, Proctor testified he found certain positive factors in the
records. Fields was attending a sex offender treatment program; he obtained a college degree
while incarcerated; he had mainly avoided violence and fighting while in prison; he took full
responsibility for his actions; he had a positive relationship with his mother and sister; he
expressed remorse and empathy, albeit only recently; and he was older (age 48). Dr. Proctor
considered the positive factors to be relatively "small and weak" compared to the risk factors. 
Based on his review of Fields's records, the interview, the DSM-IV, and tests administered
to Fields, Dr. Proctor testified Fields has a behavioral abnormality. 

 Dr. Clayton, a forensic psychiatrist, testified she interviewed Fields and reviewed a
packet of information on him. She testified the records were those typically relied on by
experts in the field for this type of evaluation. Clayton testified she conducted a psychiatric
evaluation of Fields and concluded he suffers from a behavioral abnormality. 

 Clayton diagnosed Fields with antisocial personality and concluded he is a sexual
sadist. She also characterized him as a serial rapist. Clayton explained that antisocial
personality does not go away. In arriving at her opinion, Dr. Clayton testified she gave a lot
of weight to Fields's having used force in each of the offenses and having offended again
after he was released on mandatory supervision. Clayton concluded there was "progression"
in Fields's offenses -- he began his sexual assaults in 1979 with a knife, and moved to a gun
with the later offenses. Once he began the series of rapes in 1979, he was aggressive and
bold and "raping or attempting to rape on a regular basis, despite fearing apprehension." The
rapes became more violent and threatening. Clayton explained that Fields's behavioral
abnormality is primarily a sexual sadism, but the antisocial personality makes him more
criminally dangerous. She also testified that in her interview of Fields he minimized the
effects of his conduct on the victims and minimized "how difficult it will be [for him to
control his conduct] on the outside." 

 In her interview with Fields and her review of the records, Dr. Clayton observed some
of the same positive factors in Fields as Dr. Proctor found, but the positive factors did not
alter her conclusion that Fields is a "viable serial rapist who is going to have urges when he
gets out to rape women . . . -- it's going to be very difficult for him to control." Dr. Clayton
testified Fields has a behavioral abnormality that makes him likely to engage in predatory
acts of sexual violence.

 Dr. Shursen, a licensed professional counselor and a licensed sex offender treatment
provider, testified for the defendant. She emphasized the importance of a person's capacity
for change and advocated a "synergistic" approach where many factors are considered. She
administered the Hare Psychopathy Checklist. Fields's score indicated he is not a
psychopath. Dr. Shursen also administered two risk assessment instruments: the Static-99
and the MnSOST. Based on the Static-99 results, Shursen concluded Fields was at high risk
for reoffending. On the MnSOST, Dr. Shursen scored Fields as a moderate risk. She
acknowledged Fields had past behavioral problems and occasional drug use; he never
successfully completed mandatory supervision; he wanted to subjugate his victims; he sought
to humiliate his victims; he committed sexual offenses in the past; and his offenses were
predatory.

 Dr. Shursen testified that the Static-99 actuarial assesses only historical data and does
not assess change in an individual. The MnSOST has one component that considers
"dynamic factors" or change, including what has happened while the person has been
incarcerated or on parole. Dr. Shursen concluded that while Fields was in prison, he
changed. He earned a college degree in psychology. He worked on trying to ascertain the
reasons for his behavior. Dr. Shursen found Fields was remorseful and took responsibility
for what he had done. At the time of trial, he was participating in a sex offender treatment
program, and Shursen believed he had benefitted from it. Dr. Shursen explained that family
support is an important factor in assessing the risk of reoffending, and Fields had a good
relationship with his mother and sister. Based on her belief that Fields had changed, Dr.
Shursen concluded that Fields does not suffer from a behavioral abnormality. 

 Fields argues essentially that the lack of a written report to support the experts'
behavioral-abnormality conclusion means there is no underlying methodology, data, or
technique. He also argues the experts did not provide the trial court with foundational data
or scientific theory explaining why the details of crimes committed in 1979 and 1985 will
support the experts' conclusions at trial that Fields suffers from a behavioral abnormality. 
During trial, Fields did not object to the experts' testimony on reliability grounds. To the
extent he is challenging reliability, he has waived that complaint. See Tex. R. App. P 33.1. 
 We address Fields's challenge as a claim that there is too great an analytical gap
between the data and the opinion proffered. See In re Commitment of Martinez, No. 09-05-493 CV, 2006 WL 2439752, at *3 (Tex. App.--Beaumont Aug. 24, 2006, no pet) (mem. op.);
In re Estate of Robinson, 140 S.W.3d 782, 792 (Tex. App.--Corpus Christi 2004, pet.
denied). The packet of information reviewed by Proctor and Clayton on Fields, their
interviews of Fields, the use of risk assessment instruments, Clayton's psychiatric evaluation
of Fields, and the use of the DSM all provide a basis for the State's experts' conclusion that
Fields suffers from a behavioral abnormality. They explained in detail the risk factors that
make him likely to engage in a predatory act of sexual violence. The opinions they expressed
had a reliable basis in the record, and their testimony was probative to establish beyond a
reasonable doubt that Fields has a behavioral abnormality that makes him likely to engage
in a predatory act of sexual violence. Their testimony was not conclusory or speculative. We
see no analytical gap. 

 The jury determines the credibility of the witnesses and the weight to be given their
testimony. In re Commitment of Mullens, 92 S.W.3d at 887. Conflicts and contradictions
in the evidence are resolved by the jury; all, part, or none of a witness's testimony may be
believed by the jury. Id. (citing Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App.
1986)). The jury may draw reasonable inferences from the evidence. Lacour v. State, 8
S.W.3d 670, 671 (Tex. Crim. App. 2000). We conclude the evidence was legally sufficient
to support the jury's verdict. Issue two is overruled. 

 In issue three, Fields contends the trial court "displayed such bias and prejudice
against Fields and his counsel that a fair trial was impossible." Fields submits ten instances
where he asserts the trial court displayed bias or apparent bias. In Dow Chemical Company
v. Francis, 46 S.W.3d 237, 240 (Tex. 2001), the Texas Supreme Court considered whether
the trial judge's comments in that case constituted bias as a matter of law. The Court relied
on Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994),
which held that "judicial rulings alone almost never constitute a valid basis for a bias or
partiality motion[.]" Francis, 46 S.W.3d at 240 (quoting Liteky, 510 U.S. at 555). Liteky
further stated that "judicial remarks during the course of a trial that are critical or
disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not
support a bias or partiality challenge." Liteky, 510 U.S. at 555. "[O]pinions formed by the
judge on the basis of facts introduced or events occurring in the course of the current
proceedings . . . do not constitute a basis for a bias or partiality motion unless they display
a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. 
Based on our review of the allegedly improper comments in the context of the entire record,
it does not appear that Fields was denied a fair trial. 

 Unless the comment or conduct could not have been rendered harmless by an
instruction, a party waives appellate review when he fails to object and request an instruction
attempting to cure any curable error. Francis, 46 S.W.3d at 241 (citing State v. Wilemon, 393
S.W.2d 816, 818 (Tex. 1965)); In re Commitment of Barbee, 192 S.W.3d 835, 847-48 (Tex.
App.--Beaumont 2006, no pet.). We do not find error that would, in the absence of an
objection, require reversal and remand of this case. See Tex. App. P. 33.1. Issue three is
overruled.

 We affirm the judgment and order of civil commitment.

 AFFIRMED.

 

 _________________________________

 DAVID GAULTNEY

 Justice

Submitted on November 18, 2009

Opinion Delivered December 17, 2009 


Before Gaultney, Kreger, and Horton, JJ.