In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00244-CV

_____

IN RE COMMITMENT OF WILLIAM CYRUS SCOTT

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-10-10849 CV

MEMORANDUM OPINION

William Cyrus Scott challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013) (the SVP statute). A jury found Scott suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court signed an order of commitment, and Scott filed this appeal from the final judgment. Scott raises five issues in his appeal, challenging an alleged error during jury selection, the trial court's exclusion of certain evidence during trial, and the legal and factual sufficiency of the evidence supporting the jury's verdict.

1

We conclude that Scott's issues are without merit, and we affirm the trial court's judgment.

## Limitation of Voir Dire

In his first issue, Scott complains the trial court erred in refusing to allow his trial counsel to ask a proper commitment question during voir dire. We apply an abuse of discretion standard to the trial court's decisions regarding voir dire. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011).

During voir dire, Scott's attorney questioned the venire panel concerning their thoughts of repeat offenders. Scott's attorney then asked,

> [W]ould everyone here agree that you need to consider all the facts and all the circumstances surrounding[,] that one thing is not more important than the other, that it's . . . a concerted effort, like all the facts and whatnot needs to be considered to make a decision. Anyone disagree with that?

Juror number eight responded, "There's something about a repeat occurrence and a repeat accusation . . . that makes me less willing to look at all the other stuff and say that's going to matter." Scott's counsel followed up on the panel member's statement and asked,

> Anyone agree . . ., that if it's a repeat situation or circumstance, that it makes it harder for you to look at all the facts surrounding it and consider all of it? You may have done that the first time it happened, but the second time because it's a repeat offense or situation--

2

The trial court interrupted Scott's counsel and indicated that he would not allow that question because counsel was "getting very close to voir diring the evidence[.]" Scott's counsel asked again if anyone agreed with the statement made by the panel member. The trial court responded, "Again, I just told you to stay away from asking that question to the entire panel like you just did. Please do not ignore my ruling. Okay?" Scott's counsel then moved on to another area.

Voir dire is one of the hardest skills for an attorney to master. Unfortunately, many lawyers approach voir dire with only a basic understanding of what questions are proper. However, the Texas Constitution guarantees a party's right to a pure and efficient jury trial. *See* Tex. Const. art. I, § 15. For this reason, Texas courts must permit a broad range of questions on voir dire to give parties latitude to discover any bias or prejudice by the potential jurors so that parties may wisely exercise peremptory challenges and determine whether grounds exist to challenge for cause. *See Hill*, 334 S.W.3d at 228; *Babcock v. Nw. Mem'l Hosp.*, 767 S.W. 2d 705, 709 (Tex. 1989).

A trial court has the discretion to prohibit improper voir dire questions, but "[a] trial court may not foreclose a proper line of questioning[.]" *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 758 (Tex. 2006). If the area of inquiry is proper, but the particular question asked is not, a trial court, in its discretion, may reject the

3

form of the question. *Id.* If to uncover potential biases a party must discuss the facts of a case, the party must be careful to form the question in a manner that avoids jury confusion and does not attempt to preview the verdict. *Id.* If a trial court determines a party's question fails to meet these requirements, then to preserve error, a party must propose to the trial court a different question or alert the court of the specific area of inquiry it intends to pursue. *Id.* at 758-59. A party must make a timely request that makes clear—by words or context—the grounds for the request, and must obtain a ruling—express or implicit—on that request. *Hill*, 334 S.W.3d at 229; Tex. R. App. P. 33.1.

Here, it is evident that Scott sought to determine whether any juror held a disqualifying bias against repeat offenders, a relevant issue in a civil commitment case. *See In re Commitment of Barbee*, 192 S.W.3d 835, 845 (Tex. App.—Beaumont 2006, no pet.) (concluding that a potential juror is disqualified from serving on the jury when biased or prejudiced for or against a party). However, asking jurors whether they would give specific evidence great or little weight is improper. *See Vasquez,* 189 S.W.3d at 751-52. To preserve error, once the trial court interrupted Scott and prohibited the single question as posed to the entire panel, Scott should have re-phrased the question and, if prohibited from asking a specific and proper follow-up question, Scott should have stated the basis on which

4

he sought to ask the question and obtained an adverse ruling. Here, Scott made no further attempt to pursue the line of questioning. Thus, no error was preserved for our review. *See* Tex. R. App. P. 33.1.

### Limitation of Cross-Examination

In his second issue, Scott argues the trial court erred in denying Scott the right to cross-examine Dr. Michael Arambula, the State's forensic psychiatrist as to a matter that was discussed during the State's direct examination. Within this issue, Scott argues that the trial court erred in refusing to allow counsel to make an offer of proof as to the testimony of Dr. Arambula excluded at trial. Pursuant to Rule 44.4(a) of the Texas Rules of Appellate Procedure, we determined that the trial court's failure to permit Scott's counsel to make an offer of proof prevented the proper presentation of this case to this Court. Accordingly, on January 9, 2014, we abated this appeal and remanded it to the trial court for Scott to make an offer of proof. The trial court held a hearing on January 21, 2014 and allowed Scott to make an offer of proof of the excluded testimony of Dr. Arambula. A supplemental record of the offer of proof was submitted to this Court.

We now consider whether the trial court committed error by restricting Scott's cross-examination of Dr. Arambula. We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Owens-*

5

*Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co., v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). If we find the trial court erred, we will reverse a judgment only if the trial court's error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

Counsel may cross-examine a witness on any matter relevant to any issue in the case, including credibility. Tex. R. Evid. 611(b). The issue the jury was required to decide here was whether Scott is a repeat sexually violent offender who presently suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a), 841.062(a).

Dr. Arambula explained to the jury the methodology he used in forming his opinion. He also explained how the records he reviewed affected his opinion concerning whether Scott has a behavioral abnormality. During the State's direct-examination, Dr. Arambula testified, without objection, that he saw an allegation in the records that one of Scott's stepsons had told Scott's stepdaughter "some similar

6

things had happened" to him. According to Dr. Arambula, the State did not pursue this allegation. Dr. Arambula recalled that Scott denied any sexually inappropriate behavior with his stepson.

On cross-examination, Scott's counsel asked Dr. Arambula about the stepdaughter's statement to CPS regarding what her youngest brother told her. Scott's counsel asked Dr. Arambula if there were also two older brothers in the family. The State objected to the relevance of this question, and the trial court sustained the State's objection. In Scott's offer of proof, Dr. Arambula testified that Scott had two older stepsons who were also interviewed. Dr. Arambula recalled both stepsons denied having been sexually molested by Scott. Dr. Arambula recalled that the youngest stepson made an outcry to his oldest sister. Dr. Arambula agreed that the youngest stepson's outcry is the only indication in the records that Scott had male victims.

We conclude it was reasonable for the trial court to find the questions regarding Scott's two older stepsons, who made no allegations of abuse by Scott, do not address a fact or consequence that would have made Dr. Arambula's prognosis more or less probable. *See* Tex. R. Evid. 401. We overrule Scott's second issue.

7

## Sufficiency of the Evidence

In his third and fourth issues, Scott challenges the factual and legal sufficiency of the evidence that he has a propensity for future sexual violence and claims that the State's experts "impermissibly merged the propensity requirement into their behavioral abnormality determinations." In his fifth issue, Scott challenges the factual sufficiency of the evidence to support a finding that he has serious difficulty controlling his behavior.

Central to his sufficiency challenge is Scott's contention that the State must not only prove that Scott suffers from a behavioral abnormality, but also that the State must separately prove Scott is likely to commit a predatory act of sexual violence, and that he has a serious difficulty controlling his behavior. The Supreme Court has previously addressed Scott's argument and held that the question of whether someone "'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 133 S. Ct. 2746 (2013) (quoting Tex. Health & Safety Code Ann. § 841.003(a)(2)). We have considered and rejected Scott's argument as well. *See In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied).

In reviewing the evidence for legal sufficiency, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for civil commitment. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). In reviewing evidence for factual sufficiency, we weigh the evidence to determine whether a verdict supported by legally sufficient evidence nevertheless reflects a risk of injustice so great that we are compelled to grant a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

Dr. Tim Proctor, a licensed psychologist and a licensed sex offender treatment provider, testified for the State. Dr. Proctor is board-certified in forensic psychology. Based on his training, his experience, the records he reviewed, and his interview with Scott, Dr. Proctor testified he believes Scott suffers from a behavioral abnormality that makes him likely to commit predatory acts of sexual violence.

Dr. Proctor explained his methodology for assessing behavioral abnormality, which he testified is consistent with the accepted standards in his field. He testified that the records he reviewed and relied upon in making his assessment are the type of records typically used by forensic psychologist in their evaluations.

9

Dr. Proctor explained, "risk factors are specific factors that suggest an increased risk for someone engaging in some type of behavior in the future." He then listed for the jury the risk factors he identified in Scott that increased Scott's risk of sexually offending. He testified that Scott has a significant history of sexual deviance as demonstrated by his pedophilia, non-exclusive type), and his sexual sadism. He also diagnosed Scott with "personality disorder not otherwise specified with antisocial traits[.]" Dr. Proctor was careful to explain that substance abuse is not the cause of Scott's offending, but identified his history with substance abuse as another factor that increased his risk to offend.

Dr. Proctor testified that Scott sexually offended against his two minor stepdaughters while he was in a sexual relationship with their mother. His offenses against the children were not one-time occurrences, but were sustained over a period of time. After Scott was convicted for offending against one of his stepdaughters, he was placed on probation, but Scott was unable to complete his probation because he engaged in a spree of sexual offenses or attempted sexual offenses of six women, one of which led to a conviction for aggravated sexual assault. Dr. Proctor also recalled that Scott attempted to establish an inappropriate relationship with someone who was a non-inmate while in prison.

10

Dr. Proctor testified Scott continues to minimize or completely deny certain parts of his sexual offending history. Dr. Proctor explained that Scott tried to blame his assaults on his alcohol abuse or justify his assaults as resulting from his bad relationship with his wife, the mother of the children he sexually assaulted. Dr. Proctor testified Scott does not fully appreciate what high risk situations exist for him in the future but focuses primarily on abstaining from the use of alcohol as a way to stop future sexual offending.

Dr. Proctor testified that the scores on the Hare Psychopathy Checklist-Revised test are related to risks for sexual reoffending. From Scott's score on the Hare test, Dr. Proctor determined that Scott was not psychopathic, but he did test positive for some psychopathic traits, including being prone to boredom, conning and manipulative, callous, and lacking empathy. He further determined that Scott engaged in promiscuous sexual behavior, offended while on probation, and demonstrated criminal versatility, which are further risk factors for reoffending.

Dr. Proctor also conducted the Static 99-R test, which is an actuarial measure used to help assess risk for sexual offending. Scott received a score of six, which places him in the high risk for sexual offending category. Dr. Proctor identified a number of risk factors that increase Scott's risk for sexual offending, including sexual deviance, pedophiliac interest, sexual sadism, multiple sex

offense convictions, multiple additional attempted victims, history of committing sex offenses while under supervision for another sex offense, unrelated victims, stranger victims, history of an allegation from a male, use of physical coercion in sexual violence, history of multiple victim age groups, history of multiple acts on a single victim within a single sex offense event, received a major disciplinary case while in prison, history of a nonsexual violent conviction, history of employment instability, antisocial personality pathology, multiple prior sentencing dates, substance dependence history, ongoing issues with denial, and minimization and failure to take responsibility for his actions.

Dr. Proctor did note some protective factors that reduce Scott's risk of offending, which included Scott's age, his enrollment in sex offender treatment, and that he will be on supervision for an extended period of time upon his release. He indicated that this last protective factor is mitigated somewhat by the fact that Scott has been unsuccessful on supervision in the past.

Dr. Arambula, a board-certified forensic psychiatrist, described the methodology he uses to assess an individual for a behavioral abnormality. He testified that other experts in his field follow the methodology he uses and it is the standard accepted methodology. He testified he conducted a clinical exam of Scott and reviewed Scott's records. Specifically, Dr. Arambula reviewed Scott's mental

health evaluations, his prison medical records, records of his prior offenses and convictions, victim statements, his administrative prison records, and the deposition transcripts of Scott and some other mental health professionals deposed in this case. He testified experts in his field rely on these kinds of records. Based on the records he reviewed, his education, training, and experiences, Dr. Arambula concluded Scott suffers from a behavioral abnormality that would make him likely to commit predatory acts of sexual violence.

Dr. Arambula noted that during his two to three hour exam of Scott, Scott either denied or minimized a significant portion of his sexual behavior or misbehavior. He testified Scott's current denial and minimization is evidence of his current mental condition. He also testified he found a number of discrepancies in Scott's self-reporting of his offenses.

Dr. Arambula diagnosed Scott with sexual deviance, which he broke down into pedophilia and paraphilia, not otherwise specified with sadistic features. Dr. Arambula also diagnosed Scott with substance dependence, which he acknowledged is in remission. He further diagnosed Scott with antisocial personality disorder. Dr. Arambula described for the jury the evidence supporting his diagnoses of Scott.

He explained Scott's sexual deviance is a chronic illness that will not just go away. The goal of Scott's treatment is not to rid Scott of the illness but to control the illness so that the risk of re-offense is controlled. He explained the illness becomes more manageable with treatment. Dr. Arambula recalled Scott's sex offender treatment provider from prison noted Scott needed additional treatment. Dr. Arambula testified he also believes Scott needs additional treatment, noting Scott demonstrated symptoms of his illness during his trial. Dr. Arambula testified Scott was not able to manage or control his behavioral abnormality that makes him more likely to engage in a predatory act of sexual violence. Dr. Arambula testified Scott has not received enough treatment to lower his risk of reoffending.

Dr. Arambula identified Scott's two greatest risk factors for reoffending as his sexual deviance and antisocial personality. He explained those risk factors carry the most weight with regard to sexual offense recidivism. Dr. Arambula detailed for the jury other risk factors he considered underlie these two major factors.

Dr. Arambula recalled Scott has good family support, has shown the ability to maintain somewhat steady employment, had a good adjustment in prison where he obtained some job skills and took courses towards obtaining a degree. However, Dr. Arambula noted these positive factors are mitigated by the fact that Scott

14

offended in the past despite having good family support and, that his stable work history is compromised by apparent problems he has with controlling his temper.

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *Barbee*, 192 S.W.3d at 842. Scott's current difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and the experts' testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.).

The State's experts, Drs. Proctor and Arambula, testified Scott suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Both doctors diagnosed Scott with sexual deviance and antisocial personality disorder, which, they testified, were risk factors for recidivism. Both experts also noted Scott's history of substance abuse increased his risk of recidivism. Both experts also indicated the fact that Scott committed other sexual offenses while on probation for a sex offense was a major risk factor. Drs. Proctor and Arambula carefully explained to the jury the evidence they identified to show Scott's behavioral abnormality remains active, including his current denial and minimization of his offenses.

Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Scott has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues three, four, and five.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on December 2, 2013
Opinion Delivered May 8, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.